*In re* MARRIAGE OF RAYMELL SMITH, Petitioner and Counterrespondent-Appellee, and HARVEY SMITH, Respondent and Counterpetitioner-Appellant.

First District (3rd Division)   No. 81—1424

Opinion filed March 30, 1983.—Rehearing denied May 6, 1983.

48

Samuel L. Patterson and Howard T. Savage, both of Chicago (Howard O. Edmonds, of counsel), for appellant.

Jerome Marvin Kaplan, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

After the marriage of petitioner, Raymell Smith, and respondent, Harvey Smith, was dissolved, the trial court conducted several hearings in order to resolve the issues of custody, child support, maintenance, disposition of the marital property and attorney fees, and it entered a supplementary judgment in regard to these issues. Respondent appeals from those portions of the judgment relating to custody and division of the marital property. We affirm.

Respondent first argues that petitioner should not have been awarded custody of the two minor children. At the time of the custody hearing, one daughter was 17 years old and the other daughter was 11 years old. Since that time, the older girl has attained majority, and the issue of custody is therefore moot as to her. Contrary to respondent's assertion, the fact that this daughter is in college does not mean that she is considered a minor for custody purposes.

In support of his argument that petitioner should not have been awarded custody of the younger child, respondent contends that the trial court overlooked petitioner's poor health. Section 602(a)(5) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 602(a)(5)) requires that the trial court consider the

physical health of the individuals involved when determining custody in accordance with the best interest of the child. (See *In re Marriage of Ford* (1980), 91 Ill. App. 3d 1066, 1069, 415 N.E.2d 546, 549.) The physical condition of both parents is necessarily a material issue in custody cases. (*Marcus v. Marcus* (1974), 24 Ill. App. 3d 401, 406, 320 N.E.2d 581, 584.) Here, the record shows that the trial court was cognizant of petitioner's health problems. The court recognized, however, that despite her health problems, petitioner had been able to adequately care for the children during the 2½ years the parties had been separated. Moreover, respondent testified as to his own severe health problems, and in his brief he states that his health "may not be appreciably better than petitioner's." We conclude that the trial court adequately considered petitioner's poor health in deciding the custody issue.

Respondent also argues that the trial court disregarded the statutory requirement that the preferences of the children be considered in determining custody. (Ill. Rev. Stat. 1979, ch. 40, par. 602(a)(2).) According to respondent, the trial court was required to interview the children in order to ascertain their wishes.

Section 604(a) of the Act governs the use of interviews in custody cases, and it provides in part that "[t]he court may interview the child in chambers to ascertain the child's wishes as to his custodian and as to visitation." (Ill. Rev. Stat. 1979, ch. 40, par. 604(a).) The use of the word "may" in this section indicates that the choice of whether or not to conduct an interview is a matter within the trial court's discretion. (*In re Marriage of Padiak* (1981), 101 Ill. App. 3d 306, 315, 427 N.E.2d 1372, 1378; *DeYoung v. DeYoung* (1978), 62 Ill. App. 3d 837, 841, 379 N.E.2d 396, 399.) The court is not bound to interview the child in every custody proceeding. (Ill. Ann. Stat., ch. 40, par. 604(a), Historical & Practice Notes, at 56 (Smith-Hurd 1980).) In the present case, the court had appointed a guardian *ad litem* to represent the children. When asked by the court for his opinion as to custody, the guardian *ad litem* stated that he had spoken with the children on four or five separate occasions over the past three years and that he had also spoken with the parties as well as the doctor who had examined them. In his opinion, it was paramount that the issue of custody be decided so that the children would have peace of mind. He recommended that petitioner be given permanent custody and that respondent be given substantial visitation. When asked by the trial court what the children's wishes were, the guardian *ad litem* responded that they had made it clear that they wished to reside with their mother. The children felt that they could communicate better with

their mother, and they were upset with their father for swearing at petitioner and degrading her in front of them.

We believe that the record demonstrates that the court was adequately apprised of the children's wishes and gave them due consideration in determining custody. Section 602(a)(2) does not specify the manner in which the child's preference is to be determined. Section 604(a) makes in chambers interviews discretionary rather than mandatory, and therefore alternate methods of determining the child's wishes must be acceptable. Here, the hearing on the issue of custody did not occur until almost 2½ years after the judgment of dissolution had been entered and four years after this suit was filed. The children were not present. Petitioner's attorney informed the court that the children had appeared at several prior hearings in order to testify, but the proceedings had always been postponed. Respondent also was not present for the hearing, and no explanation was given by his attorney for his absence. Under the circumstances, and in view of the statements made by the guardian *ad litem*, we believe that the trial court was adequately apprised of the children's wishes and gave them due consideration.

Respondent also argues that the court erred in its division of the marital property. The major assets involved were a four-flat apartment building in which the parties resided and each party's nonvested pension rights. The court determined the value of the building to be $38,000 and the value of petitioner's pension to be $10,000, and it awarded this property to petitioner. The court awarded respondent his pension, which was valued at $20,000. The court found that respondent had dissipated $15,000 of the marital property, and it charged this amount to respondent in dividing the marital property. The court further ordered that petitioner pay respondent $7,500 in exchange for being awarded the real estate.

Respondent argues that the trial court erred in finding that he had dissipated marital assets totaling approximately $15,000 by withdrawing that money from his credit union and using it for nonmarital purposes. At the hearing, respondent testified that all funds in the credit union account came from his paycheck. He further testified that the money was used for a trip he took to Las Vegas, for the payment of taxes and attorney fees, and for the purchase of various household appliances and furniture for the apartment in which he lived after he ceased living with the family. According to respondent, from August 1, 1976, until August 1, 1977, he paid the mortgage on the parties' apartment building in cash. Respondent claims that he kept the money he withdrew in a cache in the basement of the apart-

ment building. Regarding a withdrawal of $5,850 that he had made from the credit union, respondent testified, "I kept it out. *** It has all been spent by myself." As to a further withdrawal of $6,300, respondent stated, "I kept it in my possession, and of course, it was spent. That money was spent, and I have a record of the expenditure of these amounts."

■ Dissipation of marital assets by one spouse in contemplation of dissolution of marriage is an unacceptable practice that will not be sanctioned. Under section 503(c)(1) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(1), now redesignated as subdivision (d)(1) pursuant to Pub. Act 82—668, effective January 1, 1982), one of the relevant factors to be considered by the court in dividing marital property is the dissipation in value of the marital and nonmarital property. Dissipation may be found where a spouse uses marital property for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage relationship is in serious jeopardy. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 462, 426 N.E.2d 1087, 1094; see *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 517-18, 386 N.E.2d 517, 521.) It is not necessary to show that the dissipation occurred at the time the parties separated or after dissolution proceedings have been instituted, for such a requirement would be overly restrictive. *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 462, 426 N.E.2d 1087, 1094.

■ We believe that the trial court's finding that respondent dissipated the $15,000 was not erroneous. Respondent's testimony regarding his use of the funds was vague. The money spent on his trip to Las Vegas was obviously not money spent for a marital purpose. Respondent's testimony that he used the credit union money to pay the mortgage for the year beginning one month prior to petitioner's filing for dissolution presented a question of credibility to be resolved by the trial court, since the testimony showed that respondent continued to be employed during this period and there was conflicting evidence as to whether he was receiving rent from tenants in the apartment building at this time. In addition, respondent did not present the record of expenditures which he allegedly kept. We conclude that respondent's assertion that the trial court "acted upon mere feeling, not upon evidence adduced at trial, in deciding this part of the case," is without merit. The evidence adequately supports the trial court's finding of dissipation

Respondent's argument that the trial court abused its discretion by declining to consider an appraisal of the apartment building which respondent offered also is without merit. The court found that the

property had a value of $38,000, which was the same amount as the appraisal figure originally suggested by respondent's attorney. Despite the fact that several hearings regarding the division of marital property were held, respondent did not seek to introduce the appraisal, which allegedly would have shown that the property was worth $45,000, until after the court had decided the case. The court refused to reopen the case for the admission of this additional evidence.

Generally, the matter of allowing a case to be reopened for the introduction of further evidence rests in the sound discretion of the trial court, and courts of review will not interfere except where that discretion was abused (*Buck v. Alton Memorial Hospital* (1980), 86 Ill. App. 3d 347, 355, 407 N.E.2d 1067, 1073) and the failure to reopen the proofs resulted in substantial injustice. (*Department of Public Works & Buildings v. First National Bank* (1965), 61 Ill. App. 2d 78, 83, 209 N.E.2d 21, 23.) Here, respondent could have presented his appraisal on many timely occasions, yet he failed to do so. Moreover, the difference between respondent's appraisal and the value given the property by the trial court was not so sizeable that failure to admit the appraisal resulted in substantial injustice to respondent. Accordingly, the trial court did not err in refusing to allow respondent to present the appraisal.

Finally, we also reject respondent's argument that the division of marital property was unfair because the trial court lacked adequate information concerning the present value of respondent's nonvested pension rights. The record shows that despite repeated requests made by the trial court to counsel to submit evidence regarding the value of the parties' pension rights, the only information submitted by the parties was a letter from each of their employers showing what the value of the pension rights would be at various retirement ages. These letters are not included in the record on appeal. The court stated that while it was reluctant to order the parties to hire an actuary because of the expense they would incur, it would welcome any actuarial data they might wish to present.

In its original decision, the court stated that the fairest way to divide the pension in the absence of actuarial data would be to award each party a one-half interest in the other's pension, based upon the portion of each pension attributable to the term of the marriage. The actual amount would be determined at the time the pension was received. Upon reconsideration, however, the court decided that it would be unfair to award petitioner one-half of respondent's pension in addition to awarding her the real estate, since respondent's pension would be substantially larger than petitioner's pension. The court then

valued respondent's pension at $19,159. It reached this figure based upon the fact that respondent was 54 years old and if he stopped working immediately, at age 65 he would receive a pension of $421 per month. At age 65, respondent would have a life expectancy of approximately 11 years. The court then applied a double discount at 6½% to reach the $19,159 figure. The court used a similar formula in determining that petitioner's pension had a present value of $9,506.

This court recently discussed the problems inherent in placing a value on nonvested pension rights in *In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 437 N.E.2d 1300. There, we stated that:

"If a trial court deems it best to divide the pension interest prior to vesting, it must take the value of the pension as determined by actuarial evidence, discount this amount to an extent in consideration of the probability it will not vest, discount to present value, and then determine the marital portion of that amount. In some cases the trial court may be able to evaluate this risk in determining the value. (*In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633.) However, generally it will require expert testimony regarding the discount factors and evidence to enable an evaluation of the probability the benefits will be enjoyed. (*Robert C.S. v. Barbara J.S.* (Del. 1981), 434 A.2d 383; *Heatwole v. Heatwole* (Wis. App. 1981), 103 Wis. 2d 613, 309 N.W.2d 380.) This method is best only where the pensioner is close to mandatory retirement age or retirement is otherwise imminent, and there are sufficient other marital assets to allow an offset to the nonpensioner spouse. *Shill v. Shill* (1979), 100 Idaho 433, 599 P.2d 1004.

Where this method proves impractical, the court may choose to postpone a decision on the ultimate method of apportionment of pension rights until the rights vest. This can be accomplished by the court simply awarding 'each spouse an appropriate portion of each pension payment as it is paid.' This method 'will require the court to continue jurisdiction to supervise the payments of pension benefits.' (*In re Marriage of Brown* (1976), 15 Cal. 3d 838, 848-49, 544 P.2d 561, 567, 126 Cal. Rptr. 633, 639; *Holbrook v. Holbrook* (1981), 103 Wis. 2d 327, 309 N.W.2d 343; [citations].)" (107 Ill. App. 3d 711, 717, 437 N.E.2d 1300, 1305.)

We believe that the record here shows that the court reasonably valued the pension plans and that the method it used was in line with the criteria set forth in *Wisniewski*.

■ Respondent does not argue that the court should have post-

poned a decision on the apportionment of the pension rights until the rights vested. Rather, he makes a general argument that "[t]he trial court lacked information about the present value of the respondent's contingent pension ***," and it "overlooked the requirement to obtain the present value of the respondent's contingent pension ***." This argument is untenable, however, because it is not the trial court's obligation to obtain the value of the pension rights. Rather, the trial court must value the pension rights based upon the evidence presented by the parties. Here, the gist of respondent's argument appears to be that the trial court lacked sufficient actuarial data. Respondent does not argue that actuarial data is mandatory, and in his brief he states that the court "demonstrated sound thinking in this matter by observing that it would not be economically feasible for the petitioner and respondent to retain an actuary to make the requisite computations; it refused to order them to incur the expense of hiring an actuary." Moreover, respondent does not indicate what additional information he would present if the case were remanded, since it is clear that he does not wish to hire an actuary. The real tenor of respondent's argument is that the court's lack of adequate information to be used in valuing respondent's pension rights is somehow attributable to the court. As we stated above, however, it was the parties' responsibility to present the requisite data to the trial court, especially since the court repeatedly requested additional data. Under these circumstances, we believe that the court's valuation of respondent's pension rights was reasonable and that it would serve no useful purpose to remand this case for a redetermination of the present value of the pension rights.

■■ We here opine that this case presents a situation which this court sees all too often in dissolution cases. Despite the fact that numerous hearings regarding the division of property were held and that only a limited amount of property was involved, neither party presented the trial court with solid evidence of the properties' value so that the court could make the fairest possible division of the parties' assets. We again emphasize that it is the parties' obligation to present the court with sufficient evidence of the value of the property. Reviewing courts cannot continue to reverse and remand dissolution cases where the parties have had an adequate opportunity to introduce evidence but have failed to do so. Parties should not be allowed to benefit on review from their failure to introduce evidence at trial. (*In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 209; see *In re Marriage of Melton* (1981), 93 Ill. App. 3d 338, 341, 417 N.E.2d 220, 223.) Remanding cases such as the one before us would only protract

the litigation and clog the trial courts with issues which should have been disposed of at the initial hearing. As the trial court here said after numerous hearings in this case, at some point we must "ring the curtain down."

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA, P.J., and WHITE, J., concur.