## IN RE: THE MARRIAGE OF REINBERG
Case No. 88-15283 FC (10)

Eleventh Judicial Circuit, Dade County

June 23, 1990

## OPINION OF THE COURT

MARGARITA ESQUIROZ, Circuit Judge.

### FINAL JUDGMENT REGARDING EQUITABLE DISTRIBUTION AND ALIMONY

THIS CAUSE came on to be heard before the Court upon Final Hearing held on April 16, 17, 18 and 19, 1990. The Court has heard and considered the testimony of the parties and witnesses presented in their behalf and has received and considered the documentary evidence submitted. The Court has heard and considered argument of counsel and their proposals for the disposition of the issues raised herein. Based upon the foregoing, the Court finds as follows:

1. *JURISDICTION.* The Court has jurisdiction over the parties and the subject matter hereof.

2. *MARRIAGE.* The parties were married on August 26, 1962.

3. *DISSOLUTION OF MARRIAGE.* On May 2, 1988, a decree of divorce was entered in the 9th Judicial Circuit in the State of Nevada, in and for the County of Douglas. Accordingly, at the time of the Final Hearing herein, the parties were divorced.

4. *CHILDREN OF THE MARRIAGE.* Two (2) children were born of this marriage: Jay Evan Reinberg and Elise Randi Reinberg. At the time of the institution of these proceedings, as well as at the time of the Final Hearing, both were over the age of eighteen (18) years.

5. *TEMPORARY ALIMONY.* The parties separated on January 16, 1988. Thereafter, through April, 1988, the Husband voluntarily supported the maintenance and operation of the Wife's household. Subsequent to that time, however, the Husband has paid nothing towards the Wife's maintenance and support, even though in 1989, for the period from February through December, the Husband's gross receipts from his medical practice amounted to at least $60,000, in accordance with the Husband's own testimony. On May 3, 1988, an Order was entered directing the Husband to pay the Wife the sum of $300 per week for temporary alimony, commencing on May 6, 1988, and to pay all bills associated with the maintenance of the Wife's household, including department store and American Express charges. A Writ of Ne Exeat was also issued at that time. Subsequently, the Husband was found to be in arrears in the payment of said temporary support obligation in the sum of $8,274.31, as determined by an Order entered on November 30, 1988. The Court finds that the Husband is presently in arrears in the payment of said temporary support obligation, based on the evidence presented and on the Court's earlier Order, in the total sum of $55,790.00, determined as follows:

### ARREARS

| | |
|---|---|
| Electric (determined @ $100 per month × 27 months) | $2,700.00 |
| Telephone (determined @ $70 per month × 27 months) | 1,890.00 |
| $300 per week commencing on May 6, 1988 (104 weeks) | 31,200.00 |
| Temporary attorneys' fees, suit money & costs | *20,000.00* |
| **TOTAL ARREARAGES:** | *$55,790.00* |

The court finds that in the course of these proceedings, the Wife has

received approximately $84,535.00, consisting of a returned deposit for the purchase of a condominium unit in the amount of $21,430.00, by Order of August 5, 1988, as well as the monies distributed by Agreed Order of January 25, 1989, following the sale of the Three Islands Medical building, amounting to $63,105.00 to the Wife. The Husband has received approximately $61,552.00. While the Agreed Order entered on January 25, 1989, does not designate or classify the distribution made thereunder as either for payment or arrearages or as equitable distribution, the Order entered on August 5, 1988, does provide that "the amount. . .will be adjusted at final hearing either against arrearages or as equitable distribution of marital assets to her." The Court determines that, contrary to the Husband's contention, it would not be equitable to credit the Husband with the sums thus far paid to the Wife, as above outlined against the amount of temporary support arrearages owed by him of $55,790.00, inasmuch as the Husband has also received substantial sums, and the amounts thus distributed were produced by assets in joint names. Therefore, the temporary support arrearages are due and owing.

6. *DEBTS AND OBLIGATIONS.* The Husband is currently indebted in the approximate amount of One Million Two Hundred Thousand ($1,200,000.00) Dollars; One Hundred Three Thousand Eleven and $^{53}/_{100}$ ($103,011.53) Dollars is an Internal Revenue Service tax lien secured by recorded Notices of Levy and approximately Three Hundred Forty Thousand ($340,000.00) Dollars is presented by recorded Final Judgments. The Wife is indebted, pursuant to her Financial Affidavit, in the total amount of Twelve Thousand Eight Hundred Forty Eight and $^{49}/_{100}$ ($12,848.49) Dollars, consisting of a joint and several obligation of the parties to the Olympus Condominium Association of approximately Four Thousand ($4,000.00) Dollars with the balance owed to the attorney. The Husband shall be responsible for his debts as well as for the joint and several obligation to the Olympus Condominium Association in the approximate sum of $4,000.00. The Wife shall bear the remainder of her current financial obligation.

7. *EQUITABLE DISTRIBUTION.* The evidence adduced concerning the value of marital assets prior to the separation and divorce of the parties included the Husband's May 30, 1987 personal financial statement reflecting a net worth of One Million Two Hundred Forty-Two Thousand Four Hundred Thirteen ($1,242,413.00) Dollars. Except for cash (apparently all spent) and $73,500.00 as the appreciated value of jewelry accumulated during the twenty-six (26) years of the marriage (subsequently stolen prior to the institution of these proceedings), virtually all assets reflected were either the value of the Hus-

167

band's medical practice and medically related businesses or two (2) pieces of real estate, namely the Olympus Condominium (subsequently lost through foreclosure) and the Three Island Medical building site (subsequently sold and the equity value distributed to the parties). After the disposition of the Three Islands Medical real property in October, 1988, the sole remaining asset was the Husband's medical practice. As of the final hearing, the medical practice had been shut down. Accordingly, the evidence presented failed to show that there are currently any marital assets in existence for the court to distribute except for items of personal property, furniture and furnishings.

However, based on the uncontroverted evidence presented, the Court finds that in the period immediately following the parties' separation, and well before the final hearing, the Husband withdrew at least $50,000 in cash to purchase a house in his own name in the Lake Tahoe area of Nevada in February, 1988, and at least another $24,000 in early 1988, converting same to cash to remove to Nevada. In addition, as part of his move to Nevada, where he initially travelled ostensibly for the purpose of obtaining a quicker divorce from the Wife, the Husband spent $53,000 for stained glass windows in March, 1988, and then in April, 1988, he charged $16,690 at Balogh's Jewelers. The Court specifically rejects the Husband's testimony that this purchase of jewelry (a ring) was intended for his Wife, the woman he was in the process of divorcing in Nevada, and there was no evidence presented that the Wife ever received any such gifts from the Husband on or about April, 1988, or at any time thereafter. Accordingly, the Court is of the view that the evidence presented justifies a finding that the Husband dissipated marital assets in the amount of $143,960.000 (or the sum of $50,000 withdrawn for the Nevada house down payment, $24,000 withdrawn and taken to Nevada, $53,000 used to purchase stained glass, and $16,690.00 charged at Balogh's Jewelers).

Although it appears that to date no Florida court has ever directly decided the issue of whether it is proper to consider one spouse's dissipation of martial assets in determining property distribution in dissolution proceedings, courts in other jurisdictions have held that the "dissipation" by one spouse of assets otherwise subject to division constitutes a proper factor for judicial consideration in accomplishing property distribution. See *In Re: Marriage of Smith,* 114 Ill. App.3d 47, 69 Ill. Dec. 827, 448 N.E.2d 545 (Ill. App. 1983); *E.E.C. v E.J.C.,* 457 A.2d 688 (Del. 1983); *A.I.D. v P.M.D.,* 408 A.2d 940 (Del. 1979) (where dissipation is an express statutory consideration). See also cases cited in Anno., 41, A.L.R. 4th 416, § II-3, at 423-425 (1983). Some courts have held that dissipation is an appropriate consideration even

though the statutes in effect in those jurisdictions do not, in express statutory words, make dissipation a consideration in property division. Those courts view the consideration of dissipation of marital assets as a necessary incident to the statutory mandate to make a distribution that is "fair," "just," "equitable" or the like, thus finding their authority to consider dissipation in the broad, general "equity and justice" language written in their respective equitable distribution statutes, much like the language contained in Florida's equitable distribution statutory scheme. See, for example, *Sharp v Sharp*, 58 Md. App. 386, 473 A.2d 499(Md. App. 1984); *Berish v Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183 (Ohio 1982). See also *Rohling v Rohling*, 379 N.W.2d 519 (Minn. 1986). Compare with § 61.075, Fla. Stat. (1989).

In Florida, our own Third District Court of Appeal in *Zohiman v Zohiman*, 235 So.2d 532 (Fla. 3d DCA 1970) *cert. denied*, 238 So.2d 430 (Fla. 1970), upheld an $80,000.00 lump sum payment (over and above a permanent periodic alimony award) to the wife representing her share of property rights, where the evidence showed that the husband had engaged in a course of conduct intended to divest himself of large amounts of his substantial wealth mainly by gift transfers and donations to family members. The court concluded that the award of such amounts to the wife did not constitute an abuse of discretion on the part of the trial court. See also *Poe v Poe*, 522 So.2d 50, 51 (Fla. 5th DCA 1988) *Cf. Tuller v Tuller*, 469 So.2d 212 (Fla. 5th DCA 1985).

It is quite true, as the Husband argues, that in *Zohiman*, the lump sum award was ostensibly made from the pie of marital property then in existence and available for distribution, whereas in this case the dissipated property no longer exists as it has been long spent by the Husband. But the fact that assets previously dissipated no longer exist in the same or equivalent form has not prevented some courts from making a lump sum award representing the "non-dissipating" spouse's share of the value of such assets. See *Sharp v Sharp*, 473 A.2d at 505, 507; *Berish v Berish*, 432 N.E.2d at 184, 185. *Cf. Rohling v Rohling*, 379 N.W. 2d at 522; *A.I.D. v P.M.D.*, 408 A.2d at 942, 943 (upholding a $40,000 award to the wife out of future trust income as her share of marital property, although under a statute expressly requiring consideration of dissipation). As reasoned by the court in *Sharp:*

The preamble to Maryland's Marital Property Act states that "it is the policy of this State that when a marriage is dissolved the property interests of the spouses should be adjusted fairly and equitably. . ." 1978 Md. Laws ch. 794 (emphasis supplied). Thereupon, it would clearly be against the Legislature's stated public

**169**

policy to permit one spouse to squander marital property and render it impossible to make an equitable award of property. *Berish v Berish,* 69 Ohio St.2d 318, 432 N.E.2d 183, 185 (1982). Therefore, where a chancellor finds that property was intentionally dissipated in order to avoid inclusion of that property towards consideration of a monetary award, such intentional dissipation is no more than a fraud on marital rights, see, *Levin v Levin,* 166 Md. 451, 453, 171 A.77(1934), and the chancellor should consider the dissipated property as extant marital property under § 3-6A-05(a) to be valued with the other existing marital property. This principle would apply even where the dissipated property cannot be recovered because it is in the hands of a purchaser who took in good faith, without notice and for value. See, *Oles Envelope Corp. v Oles,* 193 Md. 79, 89, 65 A.2d 899 (1948). *Sharp v Sharp,* 473 A.2d at 505. In *Sharp,* the trial court had granted the wife a monetary award and alimony despite the husband's apparent lack of funds by expressly deeming "incredulous [the husband's] ability to survive such financial plight over the years," and finding "his ability to pay the alimony ordered secreted among the allowances for depreciation and farm expenses." *Sharp v Sharp,* 473 A.2d at 505. See also *Colburn v Colburn,* 15 Md. App. 503, 292 A.2d 121 (1972) (a case involving an alimony award, which the *Sharp* court could not meaningfully distinguish from a monetary award, thus warranting subjecting it to the same principles relevant to fraud and intentional dissipation). The court in *Sharp* cited the often-stated principle that dissipation may be found where one spouse uses marital property for his or her own benefit for a purpose unrelated to the marriage at a time where the marriage is undergoing an irreconcilable breakdown. *Sharp v Sharp,* 473 A.2d at 506; *In Re: Marriage of Smith,* 114 Ill. App.3d 47, 69 Ill. Dec. 827, 448 N.E. 545 (Ill. App. 1983); *Klingberg v Klingberg,* 68 Ill. App.3d 513, 25 Ill. Dec. 146, 150, 386 N.E.2d 517, 521 (1979).

In a similar vein, in *Berish v Berish,* 432 N.E.2d at 183, the Ohio Supreme Court upheld a $3,900.00 payment to the wife as her share of the parties' joint savings account, which the husband had closed after withdrawing the balance for his own use. Relying in part on the statutory language providing that the trial court may divide property as it deems "equitable," the court in *Berish* explained:

The trial court identified a specific tangible marital asset (the joint savings account) existing at the time when the parties were permanently separated and awaiting the formal termination of their marriage; discovered appellee's post-separation conversion of same to his own use; equitably returned to appellant her non-marital portion of

170

the asset; divided the balance equally between the parties; set off one-half of the value of appellant's employee stock savings plan accumulated before the parties' separation; and then ordered appellee to pay appellant her equitable share. *Berish v Berish,* 432 N.E.2d at 184. Declining to find an abuse of discretion in making an award based on assets in existence at the time of permanent separation but gone since, the court reasoned:

Indeed, inequity would likely result if this court were to blindly equate the termination of a marriage to the dissolution of a business partnership, and accept the position that if marital assets can disappear before the entry of the final divorce decree, the trial court loses all jurisdiction to

divide and determine the equities therein since said assets and liabilities must be in existence at the moment of distribution. If a trial court was rendered powerless to recognize and determine property rights in assets that do not exist at the time of the final decree, one party, from the time of separation to the time of the final decree, could withdraw all funds and, unilaterally and with impunity, squander the fruits of the marital labor. Such a position would not only be antithetical to public policy, but also to prior case law. *Berish v Berish,* 432 N.E. 2d 185.

Applying the foregoing analysis to the instant case, the Court thus awards the Wife a lump sum representing her share of the value of the dissipated assets, or one-half (½) of $143,960.00, for a lump sum award of $71,980.00.

The Court specifically rejects the Wife's contention that the distribution of marital assets should be based on the Husband's net worth as of 1987. The evidence does not support a finding of "dissipation" of marital assets, as that term has been judicially defined, beyond the dissipation of those assets specifically identified above. Specifically, the Court finds that the evidence presented at trial does not support a finding that the Husband "dissipated" his medically related businesses and his medical practice. For the purpose of equitable distribution, therefore, the Court has considered that the Wife has already received approximately $84,535.00 and is now awarded ½ value of the assets found to have been dissipated, and that the Husband has already received approximately $61,552.00. The Court concludes that there are no other assets subject to equitable distribution at this time, except for the two (2) cars and certain items of personal property, furniture and furnishings.

Concerning the distribution of the cars, the Wife is driving a

Chrysler LeBaron convertible. The Husband is presently driving a motor vehicle owned by his P.A., which is a 1983 Datsun 180ZX. The Datsun has a greater value than the LeBaron and it would be equitable that the Wife be awarded same. Since title is held by the Husband's P.A., and the Husband completely controls same, there will be no impediment for this Court directing the Husband to cause his P.A. to transfer title to the Datsun to the Wife. Furthermore, the P.A. is a party in these proceedings and the Court has jurisdiction over it.

Various items of personal property all representing marital assets, are also subject to distribution. These include the furnishings of the Wife's apartment, three of the Husband's firearms, and approximately ten martial arts instruments. The Wife maintains physical possession of all such assets. The Wife shall retain the furniture and furnishings currently located within her apartment as well as the three firearms and the martial arts instruments.

8. *PERMANENT PERIODIC ALIMONY.* The Husband concedes, and the Court agrees, that the Wife is entitled to permanent periodic alimony, terminable only upon her death or remarriage.

At the time of the final hearing, the Husband had no income, his medical practice having been closed on March 26, 1990. The uncontroverted evidence established, however, through the experts produced by both the Husband and the Wife, that the Husband could obtain salaried employment generating taxable income between $60,000 and $70,000 per year.

The Wife possesses a Bachelor Degree with a major in Elementary Education. The Wife was gainfully employed during short periods of time in the early stages of the marriage and approximately ten (10) years ago secured part time employment as a substitute teacher. The Wife is a healthy, but shy, withdrawn and substantially restricted in employment potential. The Court concludes that the Wife's earning ability is not substantial. She appeared to be still suffering from the trauma caused by the break-up of the marriage. The Court notes that there was no testimony presented at the final hearing as to what the Wife could earn.

Based upon the testimony of the experts, the court is justified in imputing income to the Husband. Florida law is quite clear that "where a former husband has an ability to earn if he so desires, the trial judge may impute an income to the husband according to what he could earn by the use of his best efforts to gain employment equal to his abilities, and on that basis enter an award of alimony as if the husband were in fact earning the income so imputed." *Maddux v*

*Maddux,* 495 So.2d 863 (Fla. 4th DCA 1986). The Court, therefore, imputes to the Husband an annual income of $65,000.

Accordingly, it is hereby

ORDERED and ADJUDGED, as follows:

1. *NON-INTERFERENCE.* Neither party will interfere with, harm, bother, harass or annoy the other at any time whatsoever.

2. *PERMANENT PERIODIC ALIMONY.* The Husband will pay unto the Wife commencing as of May 1, 1990, permanent periodic alimony in the sum of $1,750.00 per month, and he shall continue to pay said sum on the first day of each month until the death or remarriage of the Wife.

*INFORMATION CONCERNING THE OBLIGOR:*

Marvin E. Reinberg

| | |
|---|---|
| Date of Birth: | December 20, 1938 |
| Social Security No.: | 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 |
| Street Address: | 419 78th Street |
| | Miami, Florida 33154 |
| Employer: | Unknown |

*INFORMATION CONCERNING THE OBLIGEE:*

Marilyn L. Reinberg

| | |
|---|---|
| Date of Birth: | January 23, 1941 |
| Social Security No.: | 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 |
| Street Address: | 18181 N.E. 31st Court |
| | Apt. #2009 |
| | North Miami Beach, FL 33160 |
| Employer: | Unknown |

A. All payments are to be made through the Central Depository, payable to "Clerk, Circuit Court", and forwarded to:

Central Depository
15th Floor
140 West Flagler Street
Miami, Florida 33130

B. Payments shall be made by cash, check or money order. For identification and accounting purposes, the case number shall be included with each payment.

C. The Central Depository shall collect a flat fee from the Husband in the sum of $5.00 for receiving, recording, reporting, or handling the alimony payments. The flat fee shall be reduced in any case in which

**173**

said fee would result in a charge to the recipient party of an amount greater than three percent (3%) of the alimony payments, except that no fee shall be less than one dollar ($1.00).

D. The parties affected by this Order shall immediately inform the Central Depository of any change of name, address, employer, place of employment or source of income.

3. *ARREARAGES.* The Husband shall pay the arrearages in the total sum of $55,790.00 at the rate of $2,400 per year (or $200 per month) in monthly installments of $200 commencing on May 1, 1990, and continuing on the first day of each month thereafter until the entire arrearage and interest thereon is paid in full. Such payments shall not cease upon the death of the Wife, and the Court reserves jurisdiction to increase the installments should the Husband's ability to pay warrant an increase.

4. *EQUITABLE DISTRIBUTION.*

A. The Wife shall retain possession and title to all contents of her apartment, including all furniture, furnishings, fixtures and appliances therein, together with the gun collection (consisting of one Ithaca .37 caliber rifle in leather case, one .23 caliber Winchester Rifle and one .38 caliber Cobra Revolver with brown leather case), together with the martial arts instruments (consisting of six knives, two Samarai swords and one steel bar club).

B. The 1983 Datsun 280ZX is awarded to the Wife and the Chrysler LeBaron is awarded to the Husband. The Husband and Wife shall forthwith cause the title thereto to be transferred to the other.

C. Title to the two Israel Bonds, one No. M113132 in the face amount of $1,000 presently in the name of Marvin Reinberg and Marilyn Reinberg, and the other No. D203652 in the face amount of $500.00, presently in the name of Marvin Reinberg, shall be transferred to Marilyn Reinberg as the bonds are awarded to her. The Husband shall forthwith execute and deliver to the Wife, through her attorney the documentation necessary to transfer the bonds.

D. The Husband shall be liable for all debts upon which the Wife joined with him, including the obligation to the Olympus Condominium Association of approximately $4,000.00. The Wife shall be liable for the obligation she lists as owed to the attorney.

E. The Wife is hereby awarded a lump sum of $71,980.00, representing ½ of the value of the marital assets found to have been dissipated by the Husband. The Husband shall pay said sum to the Wife at the rate of $3,600 per year (or $300 per month), in monthly installments of

174

$300 commencing on May 1, 1990, and continuing on the first day of each month thereafter.

5. *RESERVATION OF JURISDICTION.* The Court specifically reserves jurisdiction for the following:

A. To consider, by appropriate motion, the award of attorneys' fees, suit money and costs.

B. To enforce all provisions of this Final Judgment.

ORDERED at Miami, Florida, this 23rd day of June, 1990.