UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Beales, Russell and Malveaux
Argued at Charlottesville, Virginia


STACEY A. WHARAM, F/K/A
  STACEY AUSTIN

v.       Record No. 2044-16-2

RICHARD E. AUSTIN

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
DECEMBER 5, 2017


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Tonya N. Gibbs (TNG Legal, PLC, on briefs), for appellant.

Lawrence D. Diehl (Ann Brakke Campfield; Barnes & Diehl, P.C.,
on brief), for appellee.


Stacey Wharam (formerly "Stacey Austin") ("wife") appeals the circuit court's November

18, 2016 order awarding Richard Austin ("husband") child support in the amount of $1,289 per

month and finding wife in contempt for failure to comply with a previous order of the circuit court.

The court ordered wife to pay husband $647,832.81 in restitution, in accordance with a monthly

payment plan, to purge herself of the contempt order.  Wife assigns ten assignments of error to the

circuit court's order and requests appellate attorney's fees.  Husband also asks for attorney's fees

related to this appeal.

I. BACKGROUND

We review the evidence in the light most favorable to husband, as we must as he is the party

prevailing below, and for the same reason, grant him all "reasonable inferences fairly deducible

therefrom."  Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999).

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence in the record establishes that, prior to their marriage on April 25, 1997, husband and wife executed a prenuptial agreement. During the marriage, husband was employed by REA Development, which, through its holding companies, operated two Arby's Roast Beef franchises. Wife was employed as the bookkeeper for husband's business. During the marriage, husband and wife had three children. The parties separated on June 22, 2013.

Thereafter, the parties engaged in contentious proceedings regarding property distribution, child custody, and child support. After the divorce proceedings began, and while wife was in sole possession of the former marital residence, wife removed numerous items of tangible personal property from the home. She sold many of these items at auction through Pete Elliot's Auction Services on April 5, 2014 and April 12, 2014. On June 26, 2014, after wife's actions were discovered, the trial court ordered wife to return those items within 45 days. For any items wife sold, the court ordered wife to provide a receipt indicating the item and the sale price.

On August 12, 2014, husband made a motion for a rule to show cause. In support of his motion, he stated that wife had not facilitated the return of this personal property or provided any receipts. On August 18, 2014, the trial court found wife in civil contempt for failure to comply with the June 26, 2014 order. The order again provided that wife could purge her contempt by returning the items not sold by September 1, 2014 and by providing receipts for the items sold.

The October 2014 Trial and the December 2014 Order

On October 27 and 28, 2014, a trial was held on the divorce, distribution of property, child custody, and child support. Following the hearing, in a December 3, 2014 order, the court granted the parties a divorce.

On December 31, 2014, the court issued a second ruling on matters addressed at the October 2014 trial (the "December 2014 order"). This order granted wife primary physical

custody of the children. However, as wife had relocated to Northern Virginia, the court required the children to remain in the care of their maternal grandmother during school days to permit them to continue attending school in Albemarle County.

With respect to distribution of property, the court awarded the martial home to husband as his separate property, given the terms of the prenuptial agreement. The court also made several findings regarding fraudulent actions taken by wife. Namely, the court found wife had: (1) forged a Deed of Gift purporting to transfer the marital home from husband to the parties as tenants by the entireties; (2) forged a power of attorney and used it to secure a mortgage on the marital home for $63,543.50 and to obtain a Deed of Trust on her separate property for $902,224.28 with husband's businesses as guarantors and the parties as co-borrowers; (3) forged powers of attorney to purchase and title a property in the parties' joint names without husband's authorization; and (4) fraudulently obtained a line of credit without husband's knowledge or approval, in the amount of $649,874.90 with husband's businesses' property as collateral and husband's businesses as guarantors. The court ordered that wife was responsible for the debts secured by these forgeries.[1]

The December 2014 order also addressed the tangible personal property that is a central issue in this appeal. The court ordered wife to return husband's gold bullion, silver and gold coins, guns and ammunition, and all personal property removed by wife and auctioned by Pete Elliot's Auction Services. The court ruled that each of these items, as well as all items in the marital home, were husband's separate property. With respect to the tangible property wife already sold or could not return, the court's order stated that "a determination of said property's

---

[1] The order also recognized that wife had failed to pay husband $22,382.81, representing one-half of the mortgage payments on the marital home, pursuant to the circuit court's August 22, 2013 ruling. The December 2014 order required wife to pay husband this amount.

value is hereby reserved and shall be addressed upon a future motion of either party." The court also awarded husband $6,000 in attorney's fees.

## The June 2016 Hearing

On June 16, 2016, the parties again appeared before the court to address husband's motion for child support[2] and to address husband's renewed motion to show cause concerning wife's failure to comply with the December 2014 order.[3] At the start of the hearing, counsel for wife informed the court that she was not retained to represented wife on husband's show cause motion – just child custody, visitation, and support. However, as the hearing proceeded, counsel for wife participated in the hearing on the show cause matters. Also, at the beginning of the hearing, the trial court and counsel discussed the possibility that the court's ruling on the show cause may be affected by wife's bankruptcy proceedings. After this discussion, the court stated that it may hear the evidence, but not enter a final order until the parties had an opportunity to submit briefs on the bankruptcy issue.

During the hearing, when asked about his employment, husband testified that he was forced to sell his Arby's franchises because, as a result of wife's fraudulent actions, he was unable to reinvest in them. He testified, "[T]he banks are pursuing me for the notes that she took out, and I have no credit whatsoever – my credit rating is destroyed. She left me with $110,000

---

[2] The parties continued to litigate over child custody following the October 2014 trial. On February 20, 2015, upon being notified that wife had removed the children to Northern Virginia and was homeschooling them, in violation of the December 2014 order, the court awarded husband primary physical custody. The parties subsequently agreed to a consent custody and visitation order, which the court entered on June 16, 2016. This order also granted husband primary physical custody.

[3] Prior to this hearing, on January 28, 2015, husband again filed a show cause motion for wife's failure to comply with the December 2014 order. During the hearing on the motion, on June 22, 2015, the court found that there was evidence to find wife in contempt of the December 2014 order, but the court reserved the matter for further hearing to be commenced after wife's bankruptcy proceedings had concluded.

on the American Express card. She left other cards maxed out. She cleaned out all of my bank accounts, personal and otherwise." Husband further testified that the bank "fire-sold the properties that Ms. Austin had in her name for 30 cents on the dollar. And they're coming after my money." He claimed that he continues to be in litigation with the bank on the remaining amount due.

Husband testified that he was not actively seeking employment. He testified that he received $15,000-$16,000 per year in interest income from his checking account where he kept approximately $500,000, which he obtained from the sale of his businesses. He also testified that he would continue receiving similar interest income on that account as long as his account balance did not drop below $500,000.

As part of husband's show cause petition to the circuit court, husband testified that wife violated the December 2014 order by failing to pay him the $22,832.81 for mortgage payments, failing to return the gold bullion and silver coins, and failing to return his firearms. Husband also testified that wife never returned the other pieces of personal property addressed by the December 2014 order. Over wife's objection, the court admitted husband's exhibit, a personal inventory (husband's "Personal Inventory List"), which listed his valuations for pieces of personal property that he claimed wife removed.[4] In admitting the exhibit, the court noted that it had previously admitted the exhibit at the October 2014 trial. The court also admitted an exhibit that was identified as an identical list, except that a painting that wife claimed was a forgery was removed from the list.[5] Husband testified that the values he attributed to each of the items were

_____

[4] Included in the list were two South Sea Tahitian pearl necklaces, which husband conceded on appeal should not have been included in the award.

[5] It is undisputed that wife returned this painting to husband's counsel prior to the hearing. Also omitted from the second list was one other item–"150 silver rounds" listed as worth $2,887.50. Otherwise, the two lists appear to be identical.

the best estimates that he could give at the time he prepared the list. Husband also testified to having seen a few pieces of his personal property for sale in antique stores, and he provided the court with the listing price given by the antique stores for these items.

During wife's testimony, wife informed the court that she was employed and making $75,000 a year. She testified that she disagreed with values placed on the tangible personal property, claiming that they were "highly exaggerated"; however, she did not provide any contrary evidence of the property's value other than Pete Elliot's Auction List. On cross-examination, wife testified that she had remarried and that her husband was employed and grossed approximately $190,000 per year.

The trial court issued a ruling from the bench awarding husband child support and finding wife in contempt of the December 2014 order. With respect to the child support, the court declined to impute income for husband. It awarded him $1,289 per month of child support, the amount prescribed by the guidelines. The court ordered the child support to be retroactive to April 2016, and for the months of April, May, June, and July 2016, the court reduced the award to $1,129 per month. As a result of the child support award being made retroactive, the court ordered wife to pay $3,387 in arrearages. As for the personal property, the court ordered wife to pay husband $619,000 in restitution to purge herself of the contempt order. In setting this amount, the court stated, "So while the amount that Mr. Austin has submitted to the Court is high, I can't find it's unreasonable, in looking at all of the other circumstances."

<u>The November 2016 Hearing</u>

On November 1, 2016, wife filed a "Motion to Suspend Execution of the June 16, 2016 Hearing Final Order" although at the time, no final written order had been entered. She also filed a motion to reconsider the ruling from June 16, 2016. On November 18, 2016, the trial court held a hearing for entry of a final order from the June 16, 2016 hearing. The parties used

- 6 -

the hearing to seek clarification from the court on the June 16, 2016 ruling from the bench and to finalize a proposed order. After the hearing, the trial court entered the final order awarding child support and finding wife in contempt, consistent with the ruling from the bench. The written order also provides that wife must pay husband an additional $22,832.81 for unpaid mortgage reimbursement payments and $6,000 for attorney's fees from the October 2014 trial. This brought the total judgment against wife to $647,832.81. The written order also clarified the payment plan for wife to purge herself of the contempt. Under the plan, wife was to pay a total of $2,589 to husband each month for restitution, child support, and arrearages until wife satisfies her restitution obligations. Wife objected to the final order, citing to the reasons included in her November 1, 2016 motion. This appeal followed.

## II. ANALYSIS

### A. Tangible Personal Property

Wife lists three assignment of error regarding the award to husband for the tangible personal property. We address each of these assignments of error in turn.

### 1. *Sufficient Evidence to Determine Value*

First, wife assigns error to the trial court's award of $619,000 because the "Court lacked sufficient evidence that would allow the Court to reasonably assess the value of the tangible personal property to support the monetary award." Wife argues the court's valuation was mere guesswork because the court relied significantly on husband's Personal Inventory List, which wife claims "fails to provide sufficiently clear identification of items." She specifically takes issue with the inventory's description of two items of property as "Yes," for which husband attributed the values of $27,500 and $6,500. Wife also argues that the reliability of husband's Personal Inventory List is discredited by the fact that, in his original list, he had valued a painting at $750,000, when the painting was only appraised for a few hundred dollars.

This Court reviews wife's first assignment of error for abuse of discretion. Estate of Hackler v. Hackler, 44 Va. App. 51, 64, 602 S.E.2d 426, 432-33 (2004); Hamad v. Hamad, 61 Va. App. 593, 606, 739 S.E.2d 232, 239 (2013). Moreover, "the value of property is an issue of fact, not of law," Howell v. Howell, 31 Va. App. 332, 340, 523 S.E.2d 514, 518 (2000), and this Court "will not overturn [a] factual finding unless plainly wrong or without evidence to support it." Bchara v. Bchara, 38 Va. App. 302, 313, 563 S.E.2d 398, 403 (2002) (alteration added).

Wife repeatedly failed to comply with the orders of the trial court directing her to return husband's property, which ultimately led to the contempt order.

> "Reviewing courts cannot continue to reverse and remand . . . [equitable distribution] cases where the parties have had an adequate opportunity to introduce evidence but have failed to do so. Parties should not be allowed to benefit on review for their failure to introduce evidence at trial . . . . At some point we must 'ring the curtain down.'"

Bowers v. Bowers, 4 Va. App. 610, 617-18, 359 S.E.2d 546, 550 (1987) (citing In re Marriage of Smith, 448 N.E.2d 545, 550 (Ill. App. Ct. 1983)). Although the court's order was for contempt, not equitable distribution, we find the same principle applies. Wife had the opportunity at the June 16, 2016 hearing to introduce evidence of the property's value.[6] The only evidence of value that she introduced was a list of the items she auctioned and their auction sale price. The trial court, acting within its discretion, rejected wife's argument that those amounts represented the value of the property.[7] Wife did not present other evidence on the value of the property, nor did

---

[6] We deduce from the record that wife also had the opportunity to present evidence of the property's value at the October 2014 trial where the trial court addressed matters involving distribution of property. Husband presented the court with his Personal Inventory List at that time, and we assume wife was provided with a similar opportunity to present evidence. However, wife did not provide this Court with a transcript of that proceeding.

[7] The circuit court did not disregard the auction list entirely. Instead, the court relied on it in concluding that the property wife sold was more valuable than an auction price indicated. In its ruling from the bench at the June 16, 2016 hearing, the court noted, "The Court in looking

wife even cross-examine husband regarding the items listed as "Yes." Because wife had an opportunity to present evidence on these items' value and the only evidence she presented was largely rejected by the trial court, the evidence before the trial court was sufficient to find, based on all the relevant evidence, including husband's Personal Inventory List, that wife had sold or otherwise disposed of property worth at least $619,000. Therefore, we do not find that the court's finding of fact in valuing the property wife removed at $619,000 was plainly wrong.[8]

Although we find no error with the trial court's reliance on husband's Personal Inventory List for setting the amount of the judgment against wife, we remand the judgment to the trial court in order for the trial court to find the value of the two South Sea Tahitian pearl necklaces based on the existing record.[9] Husband valued these necklaces together at $24,000 on his personal inventory. However, husband conceded on brief and in oral argument that the necklaces should not have been included on the list because they were gifts from husband's father to his granddaughters (i.e., husband's daughters). Therefore, the award should be reduced by the value of the pearl necklaces, as they did not belong to husband, and we instruct the trial court to enter a new judgment with the value of the pearls deducted.

*2. Methodology to Assess Value*

In wife's second assignment of error, wife contends that the trial court erred because it "failed to utilize a proven methodology to assess the value of the tangible personal property." Wife argues that husband's valuations are based on the assumption that the items were in pristine

_____

back through the file found that when the items were auctioned off, simply auctioned, it was over $87,000 that was acquired, and that's a great deal of money for items that are auctioned . . . ."

[8] Of course, valuing these items was quite difficult given that the items were gone because of wife's actions.

[9] As wife's counsel agreed during oral argument, the only evidence on the record is that the pearls are worth $24,000.

condition and that, for the items for which husband offered specific testimony, husband repeatedly testified to the highest listed price. Wife further argued that the trial court should have valued the property based on the sale prices of the property at auction. On this assignment of error, we affirm the trial court.

> It is generally recognized that the opinion testimony of the owner of property . . . is competent and admissible on the question of the value of such property, regardless of his knowledge of property values. It is not necessary to show that he was acquainted with the market value of such property or that he is an expert on values.

Haynes v. Glenn, 197 Va. 746, 750, 91 S.E.2d 433, 436 (1956). Husband was the owner of the property, and, as such, his testimony was competent and admissible on the property's value. Furthermore, as discussed *supra*, the court was acting within its discretion when it rejected the argument that the auction prices represented the items' values.

### 3. Husband's Separate Property

In her third assignment of error, wife argues that "the Court erred because it improperly included in the judgement [sic] entered against [wife] amounts for property not previously found to be [husband's] separate property in the equitable distribution pursuant to the December 31, 2014, Order and the pre-nuptial agreement." Wife claims that there are items on husband's Personal Inventory List that are not included on Pete Elliot's Auction List nor specifically included in the December 2014 order. Wife also claims that a number of items of jewelry were gifts to her, and thus, pursuant to the prenuptial agreement, are not husband's separate property.

On wife's third assignment of error, we affirm the trial court. As discussed with respect to wife's first and second assignments of error, the trial court was permitted to accept husband's testimony that the items on husband's Personal Inventory List were his separate property and that the value of the items exceeded $619,000. Although wife's brief states that husband's Personal Inventory List includes jewelry which belongs to wife, there is no support for that claim in the

- 10 -

record. Furthermore, it appears that the time for wife to have argued that the jewelry belonged to her would have been at the October 2014 trial where the court addressed the distribution of property. Wife did not provide this Court with a copy of the transcript from that proceeding to allow us to determine if wife presented evidence on the jewelry at that time, and we therefore consider this argument waived. See Smith v. Commonwealth, 281 Va. 464, 469, 706 S.E.2d 889, 893 (2011) ("[T]he failure to file an indispensable transcript result[s] in waiver of the issue associated with the transcript." (alteration added)).

### B. Time to Retain Counsel

In her fourth assignment of error, wife argues that the trial court erred because it "failed to give [wife] a fair and reasonable opportunity to retain Counsel for the Show Cause Hearing on June 16, 2016, and adequate time to develop and present evidence on the valuation of the tangible personal property incident to the divorce." In support of this assignment of error, wife argues: (1) husband withheld discovery from her; (2) the discovery he did provide was not provided until a week before trial, including husband's Personal Inventory List that wife did not receive until June 9, 2016; (3) wife did not retain counsel for the show cause matter because she relied on her bankruptcy counsel's representation that it would be improper for the court to proceed while bankruptcy proceedings were occurring regarding wife's estate; and (4) the trial judge proceeded to rule on the show cause matter after initially stating that she would reserve judgment on the matter. However, wife failed to preserve this issue for appeal.

In this assignment of error, wife asks us to equate her counsel's statement to the trial court that she was not retained as counsel in the show cause matter as a request for a continuance, which this Court would review for an abuse of discretion. Rosenberger v. Commonwealth, 159 Va. 953, 957, 166 S.E. 464, 465-66 (1932). However, although wife's counsel informed the judge that she was not retained for the show cause issue, neither she nor wife requested a continuance or objected

to proceeding with the hearing. Instead, wife's counsel proceeded with representing wife on the show cause matters. Furthermore, the trial court's initial statement regarding waiting to make a final ruling on the show cause does not support wife's argument. The court clearly represented that it only intended to wait to rule until it received short briefs from counsel regarding the effect of the bankruptcy. The trial court never implied that it would reserve making a ruling to allow the parties to present more evidence on the merits of the show cause. Because wife never requested a continuance, we find that she did not preserve this assignment of error, Rule 5A:18, and we affirm the ruling of the trial court.

### C. Introduction of the Inventory Exhibit

In wife's fifth assignment of error, wife argues the trial court erred when it "allowed into evidence, utilized, and relied on in rendering its decision, [husband's] Personal Inventory, which [husband] failed to timely provide in discovery." Wife claims that her attorney, who was not representing her in the show cause matter, requested all exhibits for the June 16, 2016 trial in discovery, but she did not receive the list until seven days prior to trial.[10] As a result, the only time she claims that she was able to prepare to defend against husband's valuations was during the lunch recess.

"[A] trial court's decision to admit evidence that is not timely disclosed . . . will not be reversed unless the court's action amounts to an abuse of discretion." Rappold v. Ind. Lumbermens Mut. Ins. Co., 246 Va. 10, 15, 431 S.E.2d 302, 305 (1993) (citing First Charter v. Middle Atlantic, 218 Va. 304, 308-09, 237 S.E.2d 145, 147-48 (1977)). We find no abuse of discretion in the admission (and reliance) on husband's Personal Inventory List. Even if the exhibit was produced late in discovery, an exhibit substantially similar to husband's Personal

---

[10] Wife's counsel states that although she received the list seven days before trial on page 96 of a 99 page document, she did not actually see it before the day of the hearing.

Inventory List was admitted at the October 2014 trial, and there were apparently just two items actually omitted on the list admitted at the later hearing. Thus, wife had approximately a year and a half to prepare to counter the values contained in this exhibit. We affirm the trial court on its admission of the exhibit.

## D. Restitution Payments

In her sixth assignment of error, wife claims the trial court erred by requiring her "to pay excessive and continuing restitution payments on the judgement [sic]." Specifically, wife claims that the monthly amount she was required to pay was excessive. She argues that the amount exceeds the amount she would be required to pay under Virginia garnishment laws. Pursuant to Code § 34-29(a)(1), a debtor may not have more than 25% of his or her disposable wages garnished per paycheck. She also argues that requiring her to continue to pay restitution after she has fulfilled her child support obligations will prevent her from being a "self-sufficient and an economically contributing member to society."

We find wife's argument unconvincing. The monthly payment amount set by the court was not a garnishment; it was a payment plan to allow her to purge herself of contempt. The law governing garnishments does not apply to this case. See Frazier v. Commonwealth, 3 Va. App. 84, 87, 348 S.E.2d 405, 407 (1986) ("Code § 34-29 applies to garnishments and nothing more, and is not applicable to this cause."). Therefore, we affirm the decision of the trial court.

## E. Ability to Pay

Wife's seventh assignment of error concerns wife's ability to pay the judgment. She argues that the court improperly considered the income of wife's new husband, Mr. Daniel Wharam, when considering her ability to pay restitution. We affirm the trial court because it expressly recognized that this debt was not the responsibility of Mr. Wharam, and it did not establish the payment plan with the intent that Mr. Wharam be required to pay any amount of it.

The court expressly stated that Mr. Wharam "is not indebted, but I think there is a reasonable question about do they share expenses, what are her expenses, and what is the amount that she really can pay, taking all these factors into account." The court was considering Mr. Wharam's income for the sole purpose of determining his contribution to the Wharam household expenses, in order to then determine what wife's expenses actually are. Wife has provided no legal authority supporting her position that the trial court was prohibited from considering his income for simply this purpose, and we do not believe that the trial court erred. Therefore, we affirm the judgment of the trial court.

## F. Child Support

Wife assigns two errors to the trial court's child support award to husband. In wife's eighth assignment of error, wife claims that the court "erred because it utilized speculation and conjecture to adjust [husband's] bank account balance for future months for child support." Wife claims the court was speculating when it stated, "I cannot see that [husband's] spending as it is occurring now will continue over the long term, and that's why the Court made the deviation that it is." Wife claims that the court "based this speculation on the fact that [husband's] checking account required that he keep a $500,000.00 balance to maintain the account." She argues the court "based the standard of deviation entirely on [husband's] speculated future spending habits and therefore a decrease in available resources, instead of the current circumstances as required under the law" when it only deviated downward for four months of child support.[11]

With respect to husband's bank account, wife argues the court "relied on [husband's] fraudulent misrepresentations given under oath via his testimony." She claims his testimony

---

[11] Presumably, wife is arguing that she is entitled to a deviation in child support payments until husband's $500,000 account is depleted. However, wife does not expressly state this in her brief.

- 14 -

about needing to maintain a $500,000 minimum balance was false because according to "BB&T's posted Personal Services Pricing Guide, effective April 10, 2016, the minimum balance requirement for a BB&T Private Vantage Checking account, the type of account [husband] maintains, is $15,000.00, not the $500,000.00, [husband] testified under oath to."

We find no error with the trial court's calculation of child support.

> "The determination of child support is a matter of discretion for the trial court, 'and such awards will not be reversed on appeal unless plainly wrong or unsupported by the evidence.' Although the amount of child support called for by the guidelines set forth in Code § 20-108.2 is presumptively correct, this presumption may be rebutted . . . ."

Riggins v. O'Brien, 34 Va. App. 82, 93, 538 S.E.2d 320, 325 (2000) (quoting Ragsdale v. Ragsdale, 30 Va. App. 283, 295, 516 S.E.2d 698, 703 (1999)).

Wife has not provided this Court with any authority supporting her claim that the trial court was required to continue to deviate from the guidelines based on the amount in husband's checking account. The child support award was presumptively correct as it was based on the child support guidelines, and wife has provided no support for her conclusion that the trial court's not deviating for a longer period was an abuse of discretion.

Furthermore, it is clear from husband's testimony and his exchanges with the court, that the $500,000 balance was necessary in order for husband to continue receiving a higher rate of interest that would produce $15,000 to $16,000 per year in interest income, which was his primary income after he was essentially forced to sell his business. The court found that husband was required to keep $500,000 in his account based on the evidence that husband needed this money to continue providing for himself and his children.[12] Thus, the trial court did not err in setting child support at the amount prescribed by the child support guidelines.

---

[12] At one point in the proceedings, the court asked husband the following question: "If for the sake of the Court's hypothetical, the remaining money in the BB&T bank account is

- 15 -

Wife's ninth assignment of error states that the trial court "erred by failing to give greater weight to [husband's] financial resources, work history, previous income, extravagant spending, and voluntary unemployment for child support imputation purposes and to provide a greater deviation downward and for a longer period." The crux of this assignment of error is wife's claim that the court erred in failing to impute income on husband because of his "voluntary unemployment."

"The party seeking imputation has the burden of proving that their spouse was voluntarily forgoing employment . . . ." deCamp v. deCamp, 64 Va. App. 137, 150, 765 S.E.2d 863, 870 (2014) (citing McKee v. McKee, 52 Va. App. 482, 490, 664 S.E.2d 505, 510 (2008) (*en banc*)). "The decision to impute income is within the sound discretion of the trial court and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence." McKee, 52 Va. App. at 489, 664 S.E.2d at 509 (quoting Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999)).

On this argument, we affirm the decision of the trial court because wife failed to meet her burden of proving that husband was voluntarily unemployed, and failed to produce evidence showing how much income should be imputed, even if husband were voluntarily unemployed. The record establishes that the trial court concluded that husband was not voluntarily unemployed. When overruling wife's objection to husband's explanation for selling his businesses, the court stated, "The Court is going to overrule the objection, because if he sold them just because he doesn't want to work anymore and the businesses were too much of a headache, the Court's going to impute income." Husband then proceeded to testify that he was unemployed because wife's fraudulent actions forced him to sell his business. Based on the

spent, then literally the only monies or investment or equity or source of funds that you have is what is in the E*TRADE. Am I correct?" Husband answered affirmatively.

record before us, the trial court did not abuse its discretion in refusing to impute income to husband.

## G. Distribution of Property

In wife's final assignment of error, she argues that one of the powers of attorney that wife used to fraudulently secure various debts and lines of credit was not a forgery and that husband admits to this in his complaint. Wife argues that her alleged fraud weighed heavily in the trial court's equitable distribution decision and the decision regarding the tangible personal property. She claims that, because the tangible personal property was not valued until the November 18, 2016 order, there was no final order on the equitable distribution until that time. Further, wife claims that, because "the entire case has been laced with [husband's] misrepresentations," the property distribution award should be reversed.

The December 2014 order expressly states that the tangible personal property was husband's separate property. The only issue remaining for the court to decide about the personal property from that December 2014 order was the valuing of husband's separate property, which the court addressed in the show cause proceeding. Wife did not appeal from the order that contained the findings of fact regarding wife's forgeries. Therefore, this assignment of error is not properly before us as wife did not preserve it below, and we do not address it on the merits.

## H. Appellate Attorney's Fees

Both parties request attorney's fees incurred in this appeal. Pursuant to Rule 5A:30(b), this Court may award attorney's fees to a party who makes the request and the Court "shall consider all the equities of the case." Having considered the equities, we decline to award appellate attorney's fees to either party in this case.

III. CONCLUSION

In summary, although we find that the circuit court did not err in ordering wife to pay husband $647,832.81 for failing to comply with the court's December 2014 order, we reverse and remand to the trial court solely for a finding of fact of the value of the South Sea Tahitian pearl necklaces that grandfather gave granddaughters, based on the current record before it. The circuit court should then reduce the $647,832.81 award wife must pay to husband by the value of these pearl necklaces. Husband conceded – both in his brief and at oral argument – that these pearl necklaces should not have been included on husband's Personal Inventory List.

However, we affirm the circuit court on wife's assignments of error two through ten. The circuit court did not err in admitting husband's Personal Inventory List, or in relying on husband's exhibits and testimony as to the value of the property. Wife did not request a continuance at trial, and, therefore, did not preserve that assignment of error for appeal, despite her claims now on appeal. The court did not err in ordering wife to make the payments to husband that it ordered on a continuing monthly basis. The court also did not err in awarding husband child support at the level determined by the child support guidelines. Wife's final assignment of error regarding the circuit court's finding that the power of attorney was forged was not preserved below as wife did not appeal that order in a timely manner. Finally, we decline to grant either party's request for appellate attorney's fees.

<u>Affirmed in part and reversed and remanded in part.</u>