COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder, Humphreys, Clements, Kelsey, McClanahan, Haley,
           Petty, Beales and Millette
Argued at Richmond, Virginia


BRIAN McKEE
                                                            OPINION BY
v.      Record No. 0739-07-1                        JUDGE ROBERT J. HUMPHREYS
                                                            AUGUST 5, 2008
BARBARA McKEE


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

        Debra C. Albiston (Dannielle C. Hall-McIvor; Kaufman & Canoles,
        on briefs), for appellant.

        Kenneth B. Murov for appellee.


        This matter comes before the Court on a rehearing *en banc* following a divided panel

opinion of this Court. Brian McKee ("husband") appeals from a final decree of divorce,

terminating his marriage to Barbara McKee ("wife"). He presents three issues for *en banc*

review, all stemming from the circuit court's award of spousal support to wife. He claims that

the circuit court abused its discretion by (1) refusing to impute income to wife, (2) basing its

award of support on speculative expenses claimed by wife and (3) providing for wife's mortgage

payment in the spousal support award.[1] In regard to husband's second issue presented, we

_____

        [1] Both parties requested, and were denied, attorney's fees in the initial appeal of this case
to a three-judge panel. However, neither party reiterated that request in their briefs *en banc*. Our
grant of wife's petition for *en banc* review voided the decision of the panel only as to the issues
before us *en banc*. See Ferguson v. Commonwealth, ___ Va. App. ___, ___ S.E.2d ___ (July 22,
2008). Because neither party raised the issue of attorney's fees *en banc*, we reinstate the
mandate of the panel opinion on that issue. Id.

affirm the circuit court's decision without further elaboration as the Court is evenly divided.[2]  In

regard to husband's first and third issues presented, we affirm the circuit court for the following

reasons.

I.  Background

On appeal, we view the evidence in the light most favorable to wife, the party prevailing

below.  Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  So viewed,

the evidence in this case establishes the following.

Husband and wife married on August 22, 1987.  Their marriage produced three children.

In 1991, husband and wife agreed that wife would stop working in order to stay home with their

children.  Husband is an ophthalmologist and, as such, was able to support the family solely on

his salary.  Throughout the marriage, wife stayed at home raising the couple's three children,

while husband focused on his professional pursuits.  On April 3, 2004, husband abandoned the

marriage.  On June 29, 2004, wife filed for divorce.

The parties subsequently entered into a separation agreement ("the Separation

Agreement") that settled all matters pertaining to the distribution of the couple's property.  As

part of the Separation Agreement, husband agreed to convey his interest in the marital home to

wife.  Wife agreed to become "solely responsible" and to "indemnify and hold Husband

harmless from any liability" for the home's $200,000 mortgage.  As part of the agreement,

husband and wife waived their right to equitable distribution by a court.  The couple also made it

explicit in the Separation Agreement that the agreement was to have no effect on several

unresolved issues, including spousal support.  In a paragraph entitled "EXTENT OF

AGREEMENT" the Separation Agreement declared:

---

[2] Chief Judge Felton, Judges Kelsey, McClanahan, Beales and Millette voted to affirm.
Judges Elder, Humphreys, Clements, Haley and Petty voted to reverse.

- 2 -

Husband and Wife further acknowledge that this Agreement does not contain any provisions as it relates to spousal support . . . . Husband and Wife agree that the terms of this Agreement shall have no effect on his or her claims or positions related to these matters and that each does hereby reserve all claims or position he or she has related to such matters which shall be determined by subsequent agreement between the parties or by determination by a court of competent jurisdiction. Husband and Wife further agree that neither waives any claim or position he or she has related to such matters despite any general or specific releases or waivers contained elsewhere in this Agreement.

On November 28, 2005, the circuit court held a hearing to address the issues left unresolved by the Separation Agreement. Wife's attorney explained that wife intended to borrow $250,000 against the home in order to pay off the remaining $200,000 owed on the original mortgage and make necessary repairs to the home. In the expense sheet wife provided to the court, she listed $1,500 in monthly housing expenses attributable to the new $250,000 mortgage. Husband argued that wife was not entitled to spousal support covering her mortgage payment because she had agreed to assume the mortgage in the Settlement Agreement. Husband claimed that the court was bound by Gamble v. Gamble, 14 Va. App. 558, 421 S.E.2d 635 (1992), to exclude the mortgage payment from its determination of spousal support.

Also at the hearing, husband argued that the circuit court should impute income to wife because she was qualified to work and was not doing so. In support of husband's position, Frances Charles DeMark ("DeMark"), a "vocational expert," testified regarding wife's earning capacity. He estimated that the annual earnings of respiratory therapists range from $40,000 to $52,000. DeMark testified that he had easily located advertisements of current openings for respiratory therapists at various hospitals in the area. He also stated that he "would imagine that there's [sic] also some openings in doctor's offices." DeMark concluded that wife could earn at least $30,000 to $40,000 per year working as a full-time respiratory therapist. However, he conceded that, in order to care for her three children before and after school, as she did while

- 3 -

married, wife would only be able to work part-time. DeMark did not testify as to whether part-time work was available to a respiratory therapist, nor did he provide any specific information about the availability of jobs or wife's salary potential outside the field of respiratory therapy.

In regard to her earning capacity, wife testified that, although she is a registered therapist, she is not licensed to practice respiratory care in Virginia. She explained that when she previously worked as a respiratory therapist, Virginia did not require licensure. She testified further: "Today I believe continuing education credits and licensure is required [to practice respiratory care]." When asked about the licensure issue, DeMark testified that he did not know whether wife would have to become licensed or complete continuing education courses in order to work as a respiratory therapist. When asked, "Did you check to see what the education requirements were for somebody who had not worked for 14 years?," DeMark responded simply "No."

Wife also testified that she had applied to work as a substitute teacher in the public school system and was "on the list" to substitute at her children's private school.

After the presentation of evidence by both parties, the circuit court granted spousal support to wife. The court denied husband's request that the court impute income to wife stating:

> I mean, it's somewhat incredible to think that you can be out of the job market for the length of time that [wife has], and get a job earning 45 to 55, 60 thousand dollars a year. I mean, that would be the most remarkable thing I could imagine right now. I mean it's just not – I mean, I can see you working somewhere, but the market is simply not that. I don't think the expert has enough documentation to say that those things are readily and easily available and suitable, and I also don't think it's required.

*      *      *      *      *      *      *

- 4 -

> I'm not saying that [wife] shouldn't try to work . . . but I'm not
> sure that the law says the moment your husband leaves the wife
> has to go to work, under these circumstances.

The court also held that Gamble did not prohibit the consideration of wife's mortgage payment in determining spousal support and accounted for the mortgage payment in the spousal support award.

Husband appealed the circuit court's decision. A divided three-judge panel of this Court held that the circuit court abused its discretion by applying an improper legal standard in determining that income should not be imputed to wife. Relying on Gamble, the panel unanimously held that the circuit court erred by considering wife's mortgage payment in determining spousal support.

By order dated February 29, 2008, this Court granted wife's petition for rehearing *en banc* and stayed the mandate of the panel decision.

## II. Analysis

### A. Imputation of Income

"A court may under appropriate circumstances impute income to a party seeking spousal support." Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990). "The decision to impute income is within the sound discretion of the trial court and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence." Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999). Husband claims that wife was voluntarily unemployed and that the circuit court abused its discretion by refusing to impute income to wife. He claims that the circuit court abused its discretion as a matter of law by applying an erroneous legal standard when it refused to impute income. In the alternative, he argues that, based on the evidence, the circuit court was bound to impute income to wife. We disagree on both counts.

Generally, "one who seeks spousal support is obligated to earn as much as he or she reasonably can to reduce the amount of the support need." Srinivasan, 10 Va. App. at 734, 396 S.E.2d at 679. However, so long as the spouse seeking support has not "unreasonably refused to accept employment," the spouse is "entitled to a reasonable time to secure employment." Id. Furthermore, in determining whether to impute income, the circuit court "must look to current circumstances and what the circumstances will be 'within the immediate or reasonably foreseeable future,' not to what may happen in the future." Id. at 735, 396 S.E.2d at 679 (quoting Young v. Young, 3 Va. App. 80, 81-82, 348 S.E.2d 46, 47 (1986)).

In support of his argument that the circuit court applied an erroneous standard, husband points to the following statement made by the circuit court in its ruling. The court stated:

> This is not a case of imputed income so much as it is some sort of challenge that you are voluntarily underemployed or unemployed, and that law imposes a duty upon you to be employed.
>
> I don't think that's what the law is.

However, husband neglects the rest of the circuit court's holding in which the court goes on to say:

> I'm not saying that [wife] shouldn't try to work and that that wouldn't be helpful for your mind and give you some challenges, and that you shouldn't look forward to that, but I'm not sure that the law says *the moment your husband leaves* the wife has to go to work, under these circumstances.
>
> \* \* \* \* \* \* \*
>
> The obligations and the resources of the parties, that each of you has done in this marriage make it so that [husband] should understand that while he may leave, the responsibilities to the three children and the wife remain *for a reasonable length of time*. I can't predict . . . what is going to happen in the future, and I think it would be unwise to do. All I can do is make my best decision today.

(Emphasis added).

When reading the circuit court's entire statement in context, it is clear that it did not hold that wife *never* has to return to work. The court merely held, consistent with <u>Srinivasan</u>, that the law does not require wife to return to work *immediately* in order to avoid the imputation of income. Under that proper standard, the court held that husband's responsibilities to his wife of seventeen years who, by mutual agreement, had not worked in fifteen years "remain for a reasonable length of time." In light of the present circumstances and not "what may happen in the future," <u>id.</u>, the circuit court held that wife's failure to secure employment did not require the imputation of income. Based upon the record before us, we hold that the circuit court exercised its discretion appropriately and did not apply an erroneous legal standard.

Nor did the circuit court abuse its discretion by refusing to impute income to wife. "The burden is on the party seeking the imputation to prove that the other parent was voluntarily foregoing more gainful employment, either by producing evidence of a higher-paying former job or by showing that more lucrative work was currently available." <u>Joynes v. Payne</u>, 36 Va. App. 401, 421, 551 S.E.2d 10, 19-20 (2001). The party seeking the imputation is required to present evidence "sufficient to enable the trial judge reasonably to project what amount [of income] could be anticipated." <u>Id.</u> at 421, 551 S.E.2d at 20. Husband, as the party seeking the imputation, had the burden to prove that "more lucrative work was available" to wife, as well as the amount of income she could reasonably earn.

Husband did not present any credible evidence that wife was voluntarily unemployed or of wife's earning potential. Husband presented only one witness, DeMark, to testify regarding wife's job prospects. After listening to DeMark's opinions about wife's earning capabilities, the circuit court specifically found that DeMark's assessment was "somewhat incredible." Referring to DeMark's predictions, the circuit court stated, "I mean, that would be the most remarkable thing I could imagine right now. . . . I don't think the expert has enough documentation to say

that those things are readily and easily available and suitable." "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Husband had the burden of proving that wife was voluntarily forgoing employment. He presented one witness, and the circuit court found that witness' testimony was not credible.

Moreover, DeMark's testimony was largely irrelevant because the evidence is uncontradicted that wife is not licensed in Virginia as a respiratory care provider. The only job openings and potential salaries that DeMark testified to were job openings and salaries for respiratory therapists. Wife, however, is not eligible to work as a respiratory therapist because she is not licensed to do so. It is "unlawful for any person not holding a current and valid license from the State Board of Medicine to practice as a respiratory care practitioner." Code § 54.1-2955. Although wife previously worked as a respiratory therapist, she did so before Virginia required respiratory therapists to be licensed.[3] Wife is not currently able to practice

---

[3] Code § 54.1-2955 was amended to its current version in 1998. Prior to 1998, the statute did not require that a person be licensed in order to practice respiratory care. It merely forbid uncertified persons from using certain professional titles. Specifically, it stated:

> It shall be unlawful for any person not holding a current and valid certificate from the State Board of Medicine to claim to be a respiratory therapy practitioner or to assume the title "Respiratory Therapist," "Respiratory Therapist Registered," "Certified Respiratory Therapist," "Respiratory Therapist Practitioner," "Respiratory Practitioner," or "Certified Respiratory Therapy Practitioner," or any similar term or to assume the designations "R.T.," "R.T.R.," "C.R.T.," "R.T.P.," "R.P." or "C.R.T.P." However, a person who has graduated from a duly accredited educational program in respiratory therapy shall be exempt from the preceding prohibition until he has taken and received the results of an examination required by the Board or until one year from the date of graduation, whichever occurs sooner. This section shall not be construed to prohibit any person from claiming to practice respiratory therapy using the title

that profession and is therefore not eligible for *any* of the jobs about which husband presented specific evidence regarding wife's potential income. Husband, thus, did not meet his burden of proving that "more lucrative work was currently available" to wife. Joynes, 36 Va. App. at 421, 551 S.E.2d at 20.

In determining whether to impute income, the circuit court "must look to current circumstances and what the circumstances will be within the immediate or reasonably foreseeable future." Srinivasan, 10 Va. App. at 735, 396 S.E.2d at 679. The current circumstances are that wife cannot legally work as a respiratory therapist. She is currently trying to find employment that will not interfere with her maternal responsibilities. She has applied to be a substitute teacher in the public school system and has placed her name on the list of substitute teachers at her children's private school. The circuit court found that husband failed to meet his burden to prove she is voluntarily unemployed, and the record supports that conclusion. Under these circumstances, we cannot say that the circuit court was plainly wrong or abused its discretion in refusing to impute income to wife. See Theismann v. Theismann, 22 Va. App. 557, 573, 471 S.E.2d 809, 817 (holding that the circuit court did not abuse its discretion in refusing to impute income to a spouse where the spouse "had made preliminary efforts at reentering the workforce and that she had not refused any offers of employment"), aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996).

### B. Spousal Support

"Whether and how much spousal support will be awarded is a matter of discretion for the trial court." Barker v. Barker, 27 Va. App. 519, 527, 500 S.E.2d 240, 244 (1998). "In determining the amount of an award, the court must consider all of the factors set forth in Code

"Respiratory Therapy Assistant, R.T.A." or other titles licensed or certified by the Commonwealth.

§ 20-107.1." Stubblebine v. Stubblebine, 22 Va. App. 703, 707, 473 S.E.2d 72, 74 (1996).

Where the trial court has considered all of the statutory factors, and has provided written findings and conclusions identifying the statutory factors that support its ruling, we will not disturb that decision on appeal absent a clear abuse of discretion. Robinson v. Robinson, 50 Va. App. 189, 648 S.E.2d 314 (2007).

Husband claims that the circuit court abused its discretion by considering wife's mortgage payment in the spousal support award. He argues that Gamble mandates that when a spouse, as part of a divorce, receives ownership of the marital home with an outstanding mortgage, that spouse cannot seek support to pay the mortgage on that home. Husband argues that, in such cases, circuit courts can never consider a spouse's mortgage payment in determining spousal support. We disagree.

We consider our holding in Gamble a narrow one, based on unique facts. The chancellor in Gamble awarded the marital home to the wife as part of the distribution of property under Code § 20-107.3. 14 Va. App. at 561, 421 S.E.2d at 637. Along with her receipt of the marital home, the wife became liable for two mortgages encumbering the home. Id. at 576, 421 S.E.2d at 646. Those mortgage payments totaled $881 per month. Id. The chancellor then awarded the wife spousal support in the amount of $850. Id. However, in doing so, the chancellor committed several errors. First, the chancellor erred by failing to consider all of the wife's income. Id. at 575, 421 S.E.2d at 645. The wife was renting a room in her home, for which she received $250 per month. The chancellor did not include that $250 in its determination of the wife's spousal support need. Next, the chancellor's award of $850 to the wife resulted in the wife having more disposable income than the husband. Id. When that was brought to the chancellor's attention, the chancellor found that fact to have little significance. Finally, the chancellor also erroneously

credited the wife with making one of the mortgage payments, when the husband was actually making the payment. Id. at 576, 421 S.E.2d at 646.

In light of all of those missteps by the chancellor, we held that the chancellor "effectively provided the financial means by which [the wife] could satisfy the monthly mortgage obligations on the marital property she sought and received [through equitable distribution]." Id. We noted further that "the chancellor's reasoning [led] us to the conclusion that the award was fashioned primarily for that purpose." Id. We held that the chancellor abused his discretion by awarding spousal support for the sole purpose of satisfying the wife's mortgage payment. The chancellor was required to award spousal support in light of *all* of the factors in Code § 20-107.1, not solely the wife's mortgage expenses.

Gamble does not stand for the proposition that a circuit court cannot consider a spouse's mortgage payment in determining that spouse's need for support. In fact, we clearly held in Gamble that the chancellor erred, not by considering the wife's mortgage payments, but by misallocating the mortgage expenses in determining the wife's need:

> [T]he chancellor considered the monetary award and the required conveyance of the marital home to Mrs. Gamble and "the fact that she will be responsible for both the first and second mortgage payments" on that property in the total monthly amount of $881. The record reflects that the first mortgage payment of $372 monthly was an obligation listed on Mrs. Gamble's expense sheet that the chancellor considered in determining her obligations and net monthly income under factor one. Thus, the second mortgage payment of $509 monthly, rather than $881, would have been the maximum amount *properly considered by the chancellor under factor eight*. Moreover, because Mr. Gamble had previously been making this second mortgage payment, the chancellor necessarily had to have considered that fact when making the adjustment to Mrs. Gamble's monthly expenses under factor one. In short, either Mr. Gamble has less disposable net income than determined by the chancellor because he has not been credited with making the second mortgage payment or Mrs. Gamble has more disposable income than determined by the chancellor because she has been credited with an obligation that she does not have.

- 11 -

Id. (emphasis added).  Not only did we explicitly hold that the chancellor could have "properly considered" the wife's obligation on the mortgage, we remanded the case "[because] we [were] unable to determine that the amount of the award would be the same had the chancellor properly considered . . . the payment of the second mortgage." Id. at 577, 421 S.E.2d at 647.  The chancellor erred by improperly crediting the wrong spouse with the mortgage obligation, not by considering the wife's mortgage obligations.

The facts of this case illustrate quite well the inequity that would occur if we interpreted Gamble to mean what husband says it means.  Husband claims that wife cannot include her $1,500 mortgage payment in her list of expenses, because the mortgage encumbers property she received as part of the divorce.  At the same time, husband listed a $5,000 mortgage payment on his expense sheet that he presented to the circuit court.  That $5,000 amounted to over one third of husband's total expenses and reduced his ability to pay by 25%.  It would be fundamentally unfair to allow husband to reduce his ability to pay by including his mortgage payment as an expense, while refusing to allow wife to demonstrate her financial need by listing her mortgage payment as an expense.

Under Virginia's statutory scheme, a circuit court is required to consider 13 factors in determining whether and in what amount to award spousal support.  Code § 20-107.1.  Among those factors are each spouse's financial obligations and needs, the standard of living established during the marriage, the decisions regarding employment made by the couple during the marriage, property interests of the parties, and the equitable distribution of the property.  In light of those factors, it is clear that a spouse's reasonable housing related expenses must be considered when determining that spouse's needs, obligations, and ability to pay spousal support.  That is not to say that those expenses must be included in the ultimate award, but Code

§ 20-107.1 requires that the court consider them. The mere fact that a spouse's housing expenses arise out of former marital property does not alter that spouse's need for housing.

Here, husband and wife agreed over fifteen years ago that wife would not work, in order to stay home with the children. The couple established a standard of living during the marriage that included living in a 6,100 square foot, $875,000 home. As part of the Settlement Agreement, husband agreed that wife would remain in the home following the divorce. He agreed further, that her assumption of the mortgage pursuant to the agreement would have "no effect" on her right to request spousal support. Remaining in that home after the divorce came at the expense of $1,500 per month. The circuit court properly considered that expense as part of wife's financial needs and obligations.

In the alternative, husband argues that wife breached the Separation Agreement by listing her mortgage payment as an expense. He claims that the provision in the Separation Agreement that wife would "indemnify and hold Husband harmless from any liability" on the mortgage prevents her from listing the mortgage payment as an expense when requesting spousal support. He reasons that by requesting support to assist her in paying the mortgage, wife is not holding him harmless from liability on the mortgage. Husband is incorrect. The "indemnify and hold harmless" provision does not prevent wife from seeking spousal support for her reasonable housing expenses. Rather, it merely assures that wife bears the obligation of the debt by requiring her to indemnify husband for any claims made by their mortgage creditor in case of default. See Bomar v. Bomar, 45 Va. App. 229, 237 n.1, 609 S.E.2d 629, 633 n.1 (2005). The "indemnify and hold harmless" agreement applies to each spouse's rights surrounding their

liability to the mortgage creditor, and in no way limits either spouse's right to seek spousal support under Code § 20-107.1.[4]

### III. Conclusion

For the foregoing reasons, we hold that the circuit court did not abuse its discretion by refusing to impute income to wife or by considering wife's mortgage obligations in awarding spousal support. Accordingly, we affirm the circuit court's decision.

Affirmed.

---

[4] It should also be noted that husband's argument along these lines is even more tenuous in light of the fact that the mortgage that wife agreed to indemnify and hold husband harmless for no longer exists. Pursuant to the Separation Agreement, wife refinanced the debt by taking out a new loan and paying off the original mortgage; effectively removing husband from any liability on the mortgage.

Haley, J., with whom Clements, J., joins, concurring, in part, and dissenting, in part.

I concur with the majority's holding regarding the third issue raised for determination en banc. I respectfully dissent, however, from the majority's holding on the first issue because I conclude, based on the statements made by the trial court, that the court applied the wrong legal standard in refusing to impute income to wife and, thus, abused its discretion. Accordingly, I would reverse the trial court's judgment and remand for reconsideration of the spousal support award, applying the correct legal standard as to imputation of income.

"A spouse is obligated to earn as much as he or she reasonably can to reduce the amount of the support need." Peter N. Swisher, Lawrence D. Diehl, & James R. Cottrell, Family Law: Theory, Practice and Forms § 9:5, at 283-84 (2008). "A court may under appropriate circumstances impute income to a party seeking spousal support. This conclusion logically flows from the principle that one who seeks spousal support is obligated to earn as much as he or she reasonably can to reduce the amount of the support need." Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990).

Here, the trial court stated: "This is not a case of imputed income so much as it is some sort of challenge that you are voluntarily underemployed or unemployed, and that law imposes a duty upon you to be employed. *I don't think that's what the law is*." (Emphasis added). The problem with the trial court's statement is that it is simply wrong. As the commentators and case law quoted above demonstrate, the law does impose a duty upon a spouse who seeks spousal support to be reasonably employed to reduce the support need.

That obligation, or legal duty, is tempered by the consideration that a spouse is entitled to a reasonable time to obtain employment and by a further consideration of the need for care of young children. In this case, the parties had been separated for 20 months. The parties' three children, ages 11, 13, and 15, were all in school. A court may impute income when "the

- 15 -

evidence reveals that the child or children are in school." Brody v. Brody, 16 Va. App. 647, 650, 432 S.E.2d 20, 22 (1993).

The trial court continued:

> Now, it's probably true . . . you probably, *with your background*, would feel good -- and I'm not saying that you shouldn't try to work and that that wouldn't be helpful for your mind and give you some challenges, and that you shouldn't look forward to that, but I'm not sure that the law says the moment your husband leaves the wife has to go to work . . . .

(Emphasis added). That background includes the facts that wife has a bachelor's degree in biology and psychology from the University of Pittsburgh, a master's degree in public administration from the University of Kentucky, and an associate's degree in respiratory therapy. Code § 20-107.1(E)(9) requires a court to consider "[t]he earning capacity, including the skills, education and training of the parties and the present employment opportunities for persons possessing such earning capacity."

The majority concludes that the trial court "did not hold that wife *never* has to return to work" but "merely held . . . that the law does not require wife to return to work *immediately* in order to avoid the imputation of income." My contextual reading of the trial court's statements convinces me otherwise. As previously noted, 20 months had passed since the parties separated, and that period of time cannot reasonably be considered *immediately* following the separation. Additionally, the trial court stated that wife's return to work sometime in the future might make her "feel good" and be "helpful for [her] mind and give [her] some challenges," which she could "look forward to." The court never acknowledged wife's *obligation*, or *legal duty*, to return to work within a reasonable time to reduce her support need. In other words, the trial court effectively ruled that wife had no duty to ever return to work; rather, she could return to work at some point in the future, if she chose to, for her personal satisfaction and well-being. That ruling, of course, runs directly counter to the law requiring a spouse seeking spousal support "to

- 16 -

earn as much as he or she reasonably can to reduce the amount of the support need." <u>Srinivasan</u>, 10 Va. App. at 734, 396 S.E.2d at 679.

For these reasons, I would hold that the trial court erred by applying an incorrect legal standard when it refused to impute income to wife and that that error, *ipso facto*, constitutes an abuse of discretion.

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Friday** *the* **29th** *day of* **February, 2008**.

Brian McKee,                                                                                          Appellant,

 against            Record No. 0739-07-1
                   Circuit Court No. 39206PT to VC

Barbara McKee,                                                                                       Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Felton, Judges Elder, Humphreys, Clements, Kelsey, McClanahan, Haley, Petty,
Beales and Millette

On February 12, 2008 came the appellee, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on January 29, 2008, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on January 29, 2008 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

Notwithstanding the provisions of Rule 5A:35, the following briefing schedule hereby is established:  Appellant shall file an opening brief upon rehearing *en banc* within 21 days of the date of entry of this order; appellee shall file an appellee's brief upon rehearing *en banc* within 14 days of the date on which the opening brief is filed; and appellant may file a reply brief upon rehearing *en banc* within 14 days of the date on which the appellee's brief is filed.  The appellant shall attach as an

addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that the appellee shall file twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Clements and Haley
Argued at Chesapeake, Virginia


BRIAN McKEE

                                          MEMORANDUM OPINION* BY
v.        Record No. 0739-07-1              JUDGE JAMES W. HALEY, JR.
                                               JANUARY 29, 2008
BARBARA McKEE


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

Debra C. Albiston (Kaufman & Canoles, P.C., on briefs), for
appellant.

Kenneth B. Murov for appellee.


I.  Introduction

The trial court awarded Barbara McKee (wife) spousal support of $14,000 per month and

child support of $1,680 per month.  Brian McKee (husband) maintains the trial court erred in

setting spousal support by (1) failing to impute income to wife, (2) setting spousal support at a

sum unjustified by wife's expenses and his capacity to pay, and (3) including in the spousal

support award expenses covered by the child support award.  Both parties seek an award of

attorney fees associated with this appeal.

We reverse and remand on the first assignment of error, affirm in part and reverse in part

on the second assignment of error, and find husband defaulted on the third.  We deny attorney

fees associated with this appeal.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

II.  Facts

The parties married on August 22, 1987, in Pittsburgh, Pennsylvania.  The marriage produced three children:  Sarah McKee, born in June 1990, Colin McKee, born in September 1992, and Bryce McKee, born in April 1994.  The parties separated on April 3, 2004, and wife filed a complaint seeking divorce on July 13, 2004.

The parties entered into a property settlement agreement on November 11, 2005.  Wife received the home free of any claim by husband and in exchange promised to refinance the $200,000 mortgage.  Wife agreed to "indemnify and hold Husband harmless from any liability therefrom."  Also relevant here is that husband had contributed money to an IRA with Smith Barney and a profit sharing plan.

The circuit court held a support hearing on November 28, 2005.  In relevant part, the evidence revealed as follows.

Husband has worked as an ophthalmologist for seventeen years.  Husband listed his adjusted gross income at $351,652 per year, his net monthly income at $20,034, and his monthly expenses at $13,540.  Notably, his expenses included a $5,000 mortgage monthly payment on a million dollar home he purchased after the parties separated.

Wife had no income and listed her monthly expenses at $12,213 and the children's at $2,219.  Wife acknowledged she had not actually spent money for many of the expenses she claimed.  For example, she listed a furniture expense of $300 per month, but testified she had not purchased any furniture.  A car payment of $627 per month was included, but wife testified she did not make any car payments.  Wife included the cost of an accountant and a financial advisor, which combined cost $60 per month, but testified she had not hired either one.  Wife listed $750 per month for savings, but admitted she did not save that much.  Wife reconciled these claimed expenses by maintaining they were consistent with her prior marital lifestyle.

When wife refinanced the $200,000 debt on the marital home, in accordance with the property settlement agreement, she also borrowed an additional $50,000. She planned to use $35,484 of this to fund home repairs and personal savings. Wife's mortgage payment with the extra $50,000 was $1,500 per month.

Wife ceased working in 1991 when she became pregnant with the parties' second child. Wife possesses significant professional qualifications. She has a bachelor's degree in biology and psychology from the University of Pittsburgh, a master's degree in public administration from the University of Kentucky, and an associate's degree in respiratory therapy. Wife last worked as a respiratory therapist. Wife enjoys favorable physical health, participating in twice weekly exercise classes and tennis. Wife acknowledged her physical ability to work at the hearing before the circuit court by her admission that she has applied for positions as a substitute teacher. At the time of the hearing, over two years ago, all of the parties' children were in school, with the youngest, then eleven, in the sixth grade.

Husband offered Frances Charles DeMark, Jr. as an expert in the field of rehabilitation counseling. Wife's counsel stipulated as to his expertise. DeMark examined wife's vocational profile to understand the positions she could obtain in the job market and her earning capacity. He used a number of resources, including two publications by the United States Department of Labor, a vocational computer program, an information system produced by Virginia Tech regarding Virginia employment, information produced by the Virginia Employment Commission, local newspapers, and the internet. DeMark also conducted a personal interview with wife. DeMark recognized wife's last job was as a respiratory therapist in 1991. He opined that wife could obtain a position as a respiratory therapist. In response to questioning regarding

the availability of these positions, he identified employers with openings in wife's region.[1]

DeMark testified respiratory therapists usually earn between $40,000-$52,000 per year. He also

stated that even if wife's working hours were limited to when her children were at school, she

could find part-time employment in that field. DeMark concluded that in his opinion wife's

"earning capacity on a very conservative bases [sic] would be in the range of $30,000 to

$40,000" for full time employment.

With respect to the imputation of income, the trial court stated as follows:

> I don't think the expert has enough documentation to say
> that those things are readily and easily available and suitable, and I
> also don't think it's required. This is not a case of imputed income
> so much as it is some sort of challenge that you are voluntarily
> underemployed or unemployed, and that law imposes a duty upon
> you to be employed.
>
> I don't think that's what the law is.

The circuit court also addressed the expenses wife sought as a portion of her claim for

spousal support. Concerning the award of spousal support, the circuit court first addressed

wife's mortgage payment on the marital home and whether wife could receive spousal support

for this expense. The court stated:

> I think it's unfair in negotiations to say I want the house; I want the
> house, and then come into court and say, Judge, I can't afford the
> house. The answer of the Court may be, well, sell it. But the other
> spouse does not have to pay for it as well as transfer the asset.
>
> But that's not what's occurring in this case. I think the
> $1,500, as a matter of fact, even when increased, is probably not
> unreasonable to house four people. If we take that house out of
> this, and put you trying to find a four bedroom, or a three bedroom,
> other accommodations, I'm not so sure that you would still not be
> paying in that area if it's decent and consistent with the standard
> that you've been accustomed too.

---

[1] Indeed, DeMark testified as to a position as a respiratory therapist at the local V.A. hospital posted on the internet on November 21, 2005, one week before the evidentiary hearing, and an advertisement seeking respiratory therapists at three local hospitals from the newspaper of the day preceding the hearing.

> I would say that on average you could not occupy a house of that square footage and qualify for $1,500. So I'm not so sure that that amount -- I'm not sure that you're asking your husband to contribute so that you can pay for that asset. You are asking him to contribute to your home-care expenses which would be incurred by you regardless of any particular asset.

The court further noted that a portion of wife's expenses were "estimates" and that she needed to apply "a sharper pencil" to the family budget.

The court found wife's appropriate monthly expenses to be slightly under $12,000, and to compensate for income taxes on a spousal support award in that amount, granted a final award of $14,000. The court set child support of $1,680 monthly. The divorce decree, entered on May 11, 2006, incorporated the terms of this award. A separate final decree, also incorporating the terms of the award, was entered on March 19, 2007.[2]

## III. Analysis

Code § 20-107.1(C) provides that a court "may decree that maintenance and support of a spouse be made in periodic payments for a defined duration, or in periodic payments for an undefined duration, or in a lump sum award, or in any combination thereof." The law intends to "provide a sum for such period of time as needed to maintain the spouse in the manner to which the spouse was accustomed during the marriage, balanced against the other spouse's ability to pay." Blank v. Blank, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990). Any award of spousal support "'must be based upon the circumstances in existence at the time of the award.'" Barker v. Barker, 27 Va. App. 519, 528, 500 S.E.2d 240, 244 (1998) (quoting Payne v. Payne, 5 Va. App. 359, 363, 363 S.E.2d 428, 430 (1987)). Courts may not base spousal support on "an

---

[2] Apparently the only difference in the two decrees was that the second decree formally grants a divorce, whereas the first did not (in spite of the title "Decree of Divorce"), and that the first decree retained jurisdiction to determine husband's motion to reconsider the spousal support award, as well as other matters related to implementing the court's decisions.

uncertain future circumstance." Jacobs v. Jacobs, 219 Va. 993, 995-96, 254 S.E.2d 56, 58 (1979).

Circuit courts have significant discretion in awarding and determining the amount of spousal support. Brooks v. Brooks, 27 Va. App. 314, 317, 498 S.E.2d 461, 463 (1998). We uphold the circuit court "absent a clear abuse of discretion." Lambert v. Lambert, 10 Va. App. 623, 628, 395 S.E.2d 207, 210 (1990). Where the circuit court has held an *ore tenus* hearing, the circuit court's decision must be "'plainly wrong or without evidence in the record to support it'" for this Court to reverse. Furr v. Furr, 13 Va. App. 479, 481, 413 S.E.2d 72, 73 (1992) (quoting Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989)).

A. Whether the Circuit Court Erred in Declining to Impute Income to Wife

Husband argues that a party seeking support has a duty to earn income to offset the amount the payor spouse must provide. Husband maintains he provided uncontradicted expert evidence that jobs exist consistent with wife's skills and compatible with her preferred working hours. Wife contends she is entitled to lead the lifestyle she was accustomed to during the marriage and this involves staying home and working as a homemaker.

In determining the parties' income for spousal support purposes, "a court may impute income to a party who is voluntarily unemployed or underemployed." Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994). This may include the party seeking support. Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990). "This conclusion flows logically from the principle that one who seeks spousal support is obligated to earn as much as he or she reasonably can to reduce the amount of the support need." Id. The supported spouse "may not choose a low-paying position that penalizes the [payor] spouse." Konefal v. Konefal, 18 Va. App. 612, 614, 446 S.E.2d 153, 154 (1994). Factors for a court to consider include a party's "earning capacity, financial resources, education and training, ability to secure

- 6 -

education and training, and other factors relevant to the equities" of the spouses. Joynes v. Payne, 36 Va. App. 401, 421, 551 S.E.2d 10, 19 (2001).

The party requesting an imputation of income "has the burden of proving that the other party is voluntarily foregoing more gainful employment." Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999). The requesting party may meet this burden by showing "evidence of a higher-paying former job or by showing that more lucrative work was currently available." Niemiec v. Dep't of Social Services, 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998). "The evidence must only enable the trial judge reasonably to project what amount could be anticipated." Hur v. Va. Dep't of Soc. Servs. Div. of Child Support ex rel. Klopp, 13 Va. App. 54, 61, 409 S.E.2d 454, 459 (1991). Nevertheless, the law permits a spouse unemployed at the time of separation a reasonable period to locate employment. Bruemmer v. Bruemmer, 46 Va. App. 205, 209, 616 S.E.2d 740, 742 (2005).

Although the law typically requires a spouse capable of work to seek employment, we have recognized that under some circumstances a homemaker may choose to remain at home and yet avoid imputation of income. Bennett v. Dep't of Social Services, 22 Va. App. 684, 692, 472 S.E.2d 668, 672 (1996). Nonetheless, a court may impute income where "(1) the evidence reveals that the child or children are in school, or (2) child care services are available and the cost of such child care services may be determined." Brody v. Brody, 16 Va. App. 647, 650, 432 S.E.2d 20, 22 (1993). All three of wife's children were in school at the time of the hearing, with the oldest being fifteen and the youngest being eleven.

Wife has a duty to earn money to reduce husband's spousal support obligation. Srinivasan, 10 Va. App. at 734, 396 S.E.2d at 679. Husband presented evidence wife has the ability to earn at least $30,000 per year. See Hamel v. Hamel, 18 Va. App. 10, 12-13, 441 S.E.2d 221, 222-23 (1994) (holding that where the uncontradicted evidence showed the wife

- 7 -

voluntarily quit her job, the circuit court erred in not imputing income). Wife has numerous college degrees in various fields. She has no physical limitations precluding or limiting her capacity to work. The husband's expert testified as to the immediate availability of jobs as a respiratory therapist at four local hospitals. In short, the evidence demonstrates wife "is an educated woman who is now well equipped to earn her own livelihood." Baytop v. Baytop, 199 Va. 388, 395, 100 S.E.2d 14, 19 (1957). Although the law permits a reasonable time from separation for a spouse to find a job, Bruemmer, 46 Va. App. at 209, 616 S.E.2d at 742, the hearing in this case occurred nineteen months after the parties separated.

As quoted above, and further detailed below, we find the trial court's conclusion as to the law governing imputation of income to be error. Accordingly, since that error mandates a remand, we do not address here the sufficiency of the evidence on that issue.

Contrary to the dissent's assertion, we conclude a fair analysis of all of the trial court's statements on the subject demonstrates an erroneous understanding of the law regarding imputation of income. To again quote the trial court's summation:

> I don't think the expert has enough documentation to say that those things are readily and easily available and suitable, and I also don't think it's required. This is not a case of imputed income so much as it is some sort of challenge that you are voluntarily underemployed or unemployed, and that law imposes a duty upon you to be employed.
>
> I don't think that's what the law is.

As noted, "one who seeks spousal support is obligated to earn as much as he or she reasonably can to reduce the amount of the support need." Srinivasan, 10 Va. App. at 734, 396 S.E.2d at 679.

Applicable here is our analysis in Shooltz v. Shooltz, 27 Va. App. 264, 498 S.E.2d 437 (1998), where we reversed and remanded. We stated: "The trial court's error of law with respect to its discretion to reopen the hearing was itself an abuse of discretion. As the Supreme

- 8 -

Court has recognized, a trial court 'by definition abuses its discretion when it makes an error of law.'" Id. at 271, 498 S.E.2d at 440-41 (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).

This proposition – that an application of an erroneous legal standard ipso facto constitutes an abuse of discretion – has been repeatedly applied by this Court. See, e.g., Scott v. Commonwealth, 48 Va. App. 401, 423, 632 S.E.2d 12, 22-23 (2006); Bomar v. Bomar, 45 Va. App. 229, 236, 609 S.E.2d 629, 632 (2005); Mina v. Mina, 45 Va. App. 215, 222, 609 S.E.2d 622, 626 (2005); Lanzalotti v. Lanzalotti, 41 Va. App. 550, 554, 586 S.E.2d 881, 883 (2003). Accordingly, we do not find persuasive the dissent's conclusion that the trial court did not "abuse its discretion by failing to impute income to [wife]," because the application of any erroneous legal standard by definition constitutes an abuse of discretion.

B. Whether the Circuit Court Abused Its Discretion by Setting Spousal Support at an Amount Unjustified by Wife's Expenses and in Excess of Husband's Ability to Pay

Husband first argues the circuit court erred in granting spousal support based on wife's mortgage payment. He contends that since wife received the marital home in the parties' property settlement agreement and promised to hold him harmless for the debt, she should not receive spousal support for this expense.

Applicable here is this Court's discussion in Gamble v. Gamble, 14 Va. App. 558, 577, 421 S.E.2d 635, 646-47 (1992). This Court stated:

> In addition, we take this opportunity to note that the requirement that the chancellor consider "the standard of living established during the marriage" pursuant to Code § 20-107.1 is not also an authorization to fix a spousal support award so that the receiving spouse can satisfy outstanding debts on the marital property conveyed to that spouse pursuant to Code § 20-107.3. The outstanding obligations on marital property are properly considered when Code § 20-107.3 determinations are made and the marital wealth is equitably distributed. The same obligations are not to be factored again into the Code § 20-107.1 determination. In short, the appropriate separation between considerations of

- 9 -

> spousal support and considerations of an equitable distribution of marital wealth prevent a "double dip" by a spouse who seeks and receives encumbered marital property under Code § 20-107.3 and also seeks and receives spousal support under Code § 20-107.1.

Id.

Wife received the marital residence in the parties' property settlement agreement. Wife agreed to "be solely responsible" for the mortgage payment and to "indemnify and hold Husband harmless from any liability." In order to effectuate this, the agreement provided wife would re-finance the debt encumbering the home.

Given this agreement, the circuit court erred in holding husband could be made to pay for wife's mortgage payment in spousal support. The debt on the marital property received consideration in the parties' agreement when wife received the marital home and in exchange agreed to assume the debt. The court's statement that husband could be made to pay for wife's housing payment as part of "home-care expenses," as stated above, contradicted our precedent of Gamble.

Husband also contends wife improperly sought spousal support for a number of expenses she either did not have or failed to document. He argues the circuit court's award of spousal support based on these numbers represents an abuse of discretion. We have held the "party seeking spousal support bears the burden of proving all facts necessary for an award." Robbins v. Robbins, 48 Va. App. 466, 484, 632 S.E.2d 615, 624 (2006).

The allegedly improper expenses appear on the income and expense sheet wife submitted to the circuit court. Husband complains about the listed expenses of an automobile payment ($627), savings ($750), repairs included in wife's refinanced mortgage ($250-$300), repairs and yard maintenance concerning the marital home ($660), groceries ($950), meals out ($300), gasoline ($345), the cable bill ($186), and a CPA and financial advisor ($60).

Examination of the evidence before the circuit court reveals wife failed to present sufficient evidence to sustain her burden regarding any of the above expenses and, therefore, the circuit court erred in granting spousal support based on them. Wife testified she did not have an automobile payment. While she testified a new car would be necessary in the future to maintain her standard of living consistent with that achieved during the marriage, she presented no evidence that $627 represented an appropriate figure. Concerning savings, although husband contributed money to an IRA with Smith Barney and a profit sharing plan, wife failed to present evidence that $750 per month represented an appropriate level of savings under the marital lifestyle. Regarding the monthly home maintenance expenses, wife did not provide receipts, bills, or estimates. Accordingly, the court was left with nothing but her unsubstantiated assertions. Wife admitted during her testimony that her alleged costs for groceries and meals out were excessive, stating: "That sounds outrageous, doesn't it?" The circuit court acknowledged wife's alleged gasoline and cable expenses were excessive, and wife likewise submitted no evidence as to their actual existence. Finally, while wife may need a CPA and a financial advisor sometime in the future, she presented no evidence about how much they would cost aside from her own assertions. Accordingly, wife failed to meet her burden regarding these expenses and the circuit court erred in considering them in the spousal support award.

Husband further argues the circuit court failed to consider his ability to pay the amount of spousal support awarded. He states he has net income of $20,034 per month and expenses of $13,094 per month. Yet the circuit court ordered him to pay spousal support of $14,000 per month, child support of $1,680 per month, and private school tuition of $429.50 per month. He argues the difference would not leave sufficient income to cover his expenses. Wife argues husband's analysis does not consider the tax savings to husband of paying spousal support. Wife also notes husband purchased a million dollar home and so clearly has assets available.

Husband's argument ignores the tax consequences of paying spousal support to wife. The circuit court was required to consider the tax consequences of spousal support to both husband and wife when awarding support. Code § 20-107.1(E)(13).[3] Husband's income and expense sheet showed him to have gross pay of $29,304 per month. Payment of federal and state tax, along with life insurance and disability insurance, left a net income of $20,034 per month. Husband listed total expenses of $13,094 per month.[4] This leaves a $6,940 balance. Yet the law provides a person paying spousal support receives a deduction in the amount of the support. 26 U.S.C. § 215(a). The spousal support becomes taxable income to the receiving spouse. Preston v. Comm'r, 209 F.3d 1281, 1282-83 (11th Cir. 2000). Husband presented an exhibit showing that under the $14,000 award, his net payment, after tax savings of $5,394, was actually $8,606 per month. Thus, husband retains $12,334 net of his claimed expenses.

Even though husband ostensibly lacks funds to meet his support obligations once tax savings receive consideration, the circuit court could properly find husband's purchase of a million dollar home for which he pays $5,000 per month unreasonable given his support obligations. The marital home where wife and the three children live has a value of $875,000. The circuit court stated that it did not "understand why he committed to this million dollar home right after separation before this was resolved . . . he has to remember that his first obligation would be to his family." The circuit court did not abuse its discretion in this regard.

Husband also argues the circuit court impermissibly speculated on what his income would be in the future when it was required to consider current circumstances. Having

---

[3] Husband's brief addresses the relevance of tax consequences in spousal support analysis and cites the appropriate code section, but does not acknowledge the tax benefits to husband.

[4] Husband's expense sheet listed $13,540 in monthly expenses. However, husband acknowledged in his brief that if wife paid half of private school tuition for the couple's children the expenses would only amount to $13,094.

determined the circuit court did not err based solely on the present income and expense sheet submitted by husband, the Court finds it unnecessary to consider this argument.

### C. Whether the Circuit Court Erred in Awarding Wife Spousal Support for Expenses Included in the Child Support Award

Husband claims the spousal support award includes expenses covered by the child support award. For the following reasons, we hold this argument waived by procedural default.

Parties assigning error to a circuit court must state their objection "with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. We "will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). The bare statement that a party has "seen and objected" to a ruling does not suffice. Courembis v. Courembis, 43 Va. App. 18, 26, 595 S.E.2d 505, 509 (2004).

On appeal, this Court considers only arguments raised in an appellant's questions presented. Cirrito v. Cirrito, 44 Va. App. 287, 309, 605 S.E.2d 268, 278 (2004). The questions presented must contain "a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each question was preserved in the trial court." Rule 5A:20(c).

Appellants must fully develop their legal arguments in their opening brief for the Court to consider them. Roberts v. Roberts, 41 Va. App. 513, 527, 586 S.E.2d 290, 297 (2003). The brief must contain "[t]he principles of law, the argument, and the authorities relating to each question presented." Rule 5A:20(e). "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration. We will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). Finally, arguments

raised for the first time in a reply brief are waived.  Jeter v. Commonwealth, 44 Va. App. 733,

740-41, 607 S.E.2d 734, 737 (2005).

In this case, husband's third question presented stated as follows:

> Whether the trial court erred in including in the spousal
> support award 100 percent of Wife's claimed housing mortgage
> debt, utilities, automobile expenses, and other household expenses
> when the child support award based upon the presumptive
> guideline amount reflects consideration of a portion of Wife's
> housing costs and other expenses.

The question plainly asks whether the circuit court erred in granting wife spousal support for all

of her mortgage, utilities, and car expenses because the child support award partially considered

these expenses.  The body of husband's argument continued with this question and argued error

since "the presumptive guideline amount [of child support] reflects consideration of housing

costs and other expenses."  In compliance with Rule 5A:20(c), husband's brief cited to the

appendix in the questions presented.  Husband cited appendix pages 343-57 and 355 in support

of question three.

Appendix pages 343-57 contain husband's motion to reconsider the circuit court's ruling

on spousal support.  On page 355, husband argues the circuit court erred in granting spousal

support for wife's housing expenses.  However, he assigns error not because the child support

award considered those expenses, but because those expenses received consideration in the

parties' property settlement agreement.  Husband also maintained this position during oral

argument before the circuit court.  This represents an entirely different argument than that

addressed in the question presented and husband's appellate brief.  Furthermore, page 355

contains no mention of "utilities, automobile expenses, and other household expenses."  It

pertains solely to the debt on the marital residence.

Since husband did not raise the issue in question presented three before the circuit court,

he has waived any arguments under it.  Rule 5A:18.  Furthermore, husband may not rely on his

- 14 -

property settlement agreement arguments made before the circuit court because the question presented here concerns a different issue. Cirrito, 44 Va. App. at 309, 605 S.E.2d at 278. While husband's reply brief addresses the property settlement agreement contentions, arguments made for the first time before this Court in a reply brief are waived. Jeter, 44 Va. App. at 740-41, 607 S.E.2d at 737.

The Court notes husband raised the child support issue in his objections to the March 2007 final decree.[5] Husband stated he objected "on grounds that the court's award improperly considered expenses that were or should have been included in the child support award," but did not elaborate. We held an argument waived under similar facts in Budnick v. Budnick, 42 Va. App. 823, 843, 595 S.E.2d 50, 60 (2004). The Court there stated the husband "never raised this argument in his motion to the trial court to reconsider its various judgments. While he noted this objection in his exceptions to the final decree after it was entered, he failed to specify any basis for his objection." Id. The Budnick Court held the argument defaulted under Rule 5A:18. Id. Likewise, this Court holds husband's bare notation of an objection to the March 2007 final decree insufficient to preserve an appeal.

Accordingly, we hold question presented three barred from our consideration by Rule 5A:18.

### D.  Whether to Award Attorney Fees and Costs to Either Party

Both parties move for an award of attorney fees and costs associated with this appeal. This Court has noted that it "has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). The issues in this

---

[5] Husband did not raise this issue in his objections to the divorce decree entered in May 2006.

case were complex, and neither party has fully prevailed.  We find it appropriate that the parties bear their own costs and attorney fees.

## IV.  Conclusion

As to issues not defaulted, (1) we reverse and remand for a redetermination of spousal support, if any, applying the correct legal standard as to imputation of income, (2) we reverse the trial court's inclusion of expenses for which wife failed to present sufficient evidence, as detailed above, including housing costs, and (3) we affirm the trial court's determination as to husband's capacity to pay support.  Both parties' requests for attorney fees associated with this appeal are denied.

Affirmed in part,
reversed in part,
and remanded.

Humphreys, J., concurring, in part, and dissenting, in part.

I concur with the majority's holding and analysis with respect to all issues presented with the exception of its holding that the circuit court abused its discretion by failing to impute income to Barbara McKee. I therefore respectfully dissent from that portion of the majority opinion because I believe that the circuit court's refusal to impute income was not plainly wrong. I would therefore affirm its decision with respect to this issue.

"A court may under appropriate circumstances impute income to a party seeking spousal support." Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990). "The decision to impute income is within the sound discretion of the trial court and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence." Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999). Moreover, "[o]n appeal, we construe the evidence in the light most favorable to [] the prevailing party below, granting to that evidence all reasonable inferences fairly deducible therefrom." Wright v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002).

Generally, "one who seeks spousal support is obligated to earn as much as he or she reasonably can to reduce the amount of the support need." Srinivasan, 10 Va. App. at 734, 396 S.E.2d at 679. However, so long as the spouse seeking support has not "unreasonably refused to accept employment," the spouse is "entitled to a reasonable time to secure employment." Id. Furthermore, in determining whether to impute income, the circuit court "must look to current circumstances and what the circumstances will be 'within the immediate or reasonably foreseeable future,' not to what may happen in the future." Id. at 735, 396 S.E.2d at 679 (quoting Young v. Young, 3 Va. App. 80, 81-82, 348 S.E.2d 46, 47 (1986)).

The majority holds that the circuit court applied "an erroneous legal standard" in refusing to impute income to wife. In doing so, the majority quotes a portion of the circuit court's

holding on the issue. However, the majority ignores the rest of the circuit court's holding in which the court goes on to say:

> I'm not saying that [wife] shouldn't try to work and that that wouldn't be helpful for your mind and give you some challenges, and that you shouldn't look forward to that, but I'm not sure that the law says *the moment your husband leaves* the wife has to go to work, under these circumstances.

> \* \* \* \* \* \* \*

> The obligations and the resources of the parties, that each of you has done in this marriage make it so that [husband] should understand that while he may leave, the responsibilities to the three children and the wife remain *for a reasonable length of time*. I can't predict . . . what is going to happen in the future, and I think it would be unwise to do. All I can do is make my best decision today.

(Emphasis added). Thus, when reading the circuit court's entire statement in context, it is clear that it did not hold that wife never has to return to work. The court merely held, consistent with Srinivasan, that the law does not require wife to return to work *immediately* in order to avoid the imputation of income. Rather, husband's responsibilities to his wife of seventeen years who, by mutual agreement, had not worked in fifteen years "remain for a reasonable length of time." Thus, based on present circumstances and not "what is going to happen in the future," the circuit court held that wife's failure to secure employment did not require the imputation of income. Thus, in my view and contrary to the majority's assertion, the circuit court did not apply an erroneous legal standard.

Having concluded that the circuit court applied the proper legal standard, I would address whether the circuit court did not abuse its discretion by refusing to impute income to wife. I would hold that it did not. "The burden is on the party seeking the imputation to prove that the other parent was voluntarily foregoing more gainful employment, either by producing evidence of a higher-paying former job or by showing that more lucrative work was currently available."

- 18 -

Joynes v. Payne, 36 Va. App. 401, 421, 551 S.E.2d 10, 19-20 (2001). Thus husband, as the party seeking the imputation, was required to present evidence "sufficient to enable the trial judge reasonably to project what amount [of income] could be anticipated." Id. at 421, 551 S.E.2d at 20. Husband had the burden to prove that "more lucrative work was available" to wife and the amount of income she could reasonably earn.

In support of husband's position, Frances Charles DeMark, Jr. ("DeMark"), a "vocational expert," testified regarding wife's earning capacity. He estimated that the annual earnings of respiratory therapists range from $40,000 to $52,000. DeMark testified that he had easily located advertisements of current openings for respiratory therapists at various hospitals in the area. He also stated that he "would imagine that there's [sic] also some openings in doctor's offices." DeMark concluded that wife could earn at least $30,000 to $40,000 per year working as a full-time respiratory therapist. However, he conceded that, in order to care for her three children before and after school, as she did while married, wife would only be able to work part-time. DeMark did not testify as to whether part-time work is available to a respiratory therapist, nor did he provide any specific information about the availability of jobs or wife's salary potential outside the field of respiratory therapy.

In contrast, wife testified that, although she is a registered therapist, she is not licensed to practice respiratory care in Virginia. She explained that when she worked as a respiratory therapist previously, Virginia did not require licensure. She testified further: "Today I believe continuing education credits and licensure is required [to practice respiratory care]." When asked about the licensure issue, DeMark testified that he did not know whether wife would have to become licensed or complete continuing education courses in order to work as a respiratory therapist. When asked, "Did you check to see what the education requirements were for somebody who had not worked for 14 years?," DeMark responded simply "No."

Wife also testified that she had applied to work as a substitute teacher in the public school system and was "on the list" to substitute at her children's private school.

At the conclusion of the hearing the circuit court ruled on husband's request that the court impute income to wife. The court stated:

> I mean, it's somewhat incredible to think that you can be out of the job market for the length of time that [wife has], and get a job earning 45 to 55, 60 thousand dollars a year. I mean, that would be the most remarkable thing I could imagine right now. I mean it's just not -- I mean, I can see you working somewhere, but the market is simply not that. I don't think the expert has enough documentation to say that those things are readily and easily available and suitable, and I also don't think it's required.
>
>     *     *     *     *     *     *     *
>
> I'm not saying that [wife] shouldn't try to work . . . but I'm not sure that the law says the moment your husband leaves the wife has to go to work, under these circumstances.

Consequently, the circuit court refused to impute income to wife and granted her spousal support.

I would hold that the circuit court was not plainly wrong in holding husband failed to carry his burden for two primary reasons.

First, husband did not present any credible evidence that wife was voluntarily unemployed or of wife's earning potential. Husband presented only one witness, DeMark, to testify regarding wife's job prospects. After listening to DeMark's opinions about wife's earning capabilities, the circuit court specifically found that DeMark's assessment was "somewhat incredible." Referring to DeMark's predictions, the circuit court stated, "I mean, that would be the most remarkable thing I could imagine right now. . . . I don't think the expert has enough documentation to say that those things are readily and easily available and suitable." "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." <u>Sandoval v.</u>

- 20 -

Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).  Husband had the burden of proving that wife was voluntarily foregoing employment.  He presented one witness, and the circuit court found that witness' testimony was not credible.  Husband offered no other evidence of wife's earning potential.  Thus, the circuit court did not abuse its discretion by holding that husband did not meet his burden of proof.

Second, even if the circuit court had believed DeMark's testimony, it was largely irrelevant because the evidence is indeed uncontradicted that wife is not licensed in Virginia as a respiratory care provider.  The only job openings and potential salaries that DeMark specifically testified to were job openings and salaries for respiratory therapists.  However, wife is not eligible to work as a respiratory therapist because she is not licensed to do so.  It is "unlawful for any person not holding a current and valid license from the State Board of Medicine to practice as a respiratory care practitioner."  Code § 54.1-2955.  Although wife previously worked as a respiratory therapist, she did so before Virginia required respiratory therapists to be licensed.[6]

---

[6] Code § 54.1-2955 was amended to its current version in 1998.  Prior to 1998, the statute did not require that a person be licensed in order to practice respiratory care.  It merely forbid uncertified persons from using certain professional titles.  Specifically, it stated:

> It shall be unlawful for any person not holding a current and valid certificate from the State Board of Medicine to claim to be a respiratory therapy practitioner or to assume the title "Respiratory Therapist," "Respiratory Therapist Registered," "Certified Respiratory Therapist," "Respiratory Therapist Practitioner," "Respiratory Practitioner," or "Certified Respiratory Therapy Practitioner," or any similar term or to assume the designations "R.T.," "R.T.R.," "C.R.T.," "R.T.P.," "R.P." or "C.R.T.P."  However, a person who has graduated from a duly accredited educational program in respiratory therapy shall be exempt from the preceding prohibition until he has taken and received the results of an examination required by the Board or until one year from the date of graduation, whichever occurs sooner.  This section shall not be construed to prohibit any person from claiming to practice respiratory therapy using the title "Respiratory Therapy Assistant, R.T.A." or other titles licensed or certified by the Commonwealth.

Thus, even if DeMark was correct that jobs are available for respiratory therapists, it is irrelevant because wife is not currently able to practice that profession. Because wife is not eligible for *any* of the jobs that husband presented evidence about, husband did not meet his burden of proving that "more lucrative work was currently available" to wife. Joynes, 36 Va. App. at 421, 551 S.E.2d at 20.

In determining whether to impute income, the circuit court "must look to current circumstances and what the circumstances will be within the immediate or reasonably foreseeable future." Srinivasan, 10 Va. App. at 735, 396 S.E.2d at 679. Wife cannot legally work as a respiratory therapist because she is not licensed as such. She is currently trying to find employment that will not interfere with her maternal responsibilities. She has applied to be a substitute teacher in the public school system and has placed her name on the list of substitute teachers at her children's private school. The circuit court found that husband failed to meet his burden to prove she is voluntarily unemployed, and the record supports a conclusion that he presented no relevant evidence of how much she can currently earn. Under these circumstances, I cannot join the majority in holding that the circuit court was plainly wrong or abused its discretion in refusing to impute income to wife. See Theismann v. Theismann, 22 Va. App. 557, 573, 471 S.E.2d 809, 817 (holding that the circuit court did not abuse its discretion in refusing to impute income to a spouse where the spouse "had made preliminary efforts at reentering the workforce and that she had not refused any offers of employment"), aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996).

For these reasons, I do not believe that the circuit court abused its discretion by refusing to impute income to wife. I would therefore affirm its decision with respect to that issue.